Keith M. JOHNSON,
Plaintiff-Respondent and Cross-Appellant-Petitioner,

v.

PEARSON AGRI-SYSTEMS, INC., a Delaware corporation,
Defendant-Appellant and Cross-Respondent,

RAILOC COMPANY, INC., an Illinois corporation,
Defendant-Co-Appellant and Cross-Respondent.

Supreme Court

*No. 82–684. Argued May 29, 1984.—Decided June 29, 1984.*

(Also reported in 350 N.W.2d 127.)

For the plaintiff-respondent and cross-appellant-petitioner there were briefs by *Robert A. Slattery, David A. McClurg* and *Frisch, Dudek and Slattery, Ltd.,* Milwaukee, and oral argument by *Robert A. Slattery.*

For the defendant-appellant and cross-respondent there was a brief by *Carl F. Schetter* and *Schetter, Keck & Fuhrman,* Milwaukee, and oral argument by *Carl F. Schetter.*

For the defendant-co-appellant and cross-respondent there was a brief by *David J. Condon, Sara E. Ramaker* and *Condon, Hanaway, Wickert & Fenwick, Ltd.,* Green Bay, and oral argument by *David J. Condon.*

DAY, J. This is a review of an unpublished decision of the court of appeals affirming an order of the circuit court for Manitowoc county, Honorable Fred H. Hazlewood, Circuit Judge, denying a request for pre-verdict interest in a personal injury action. Two issues are presented on this review: (1) Is a plaintiff in a personal injury action entitled to interest on the damages award from the time of the injury through the date the verdict is rendered? (2) Does the court of appeals have subject matter jurisdiction over a cross-appeal from an oral order? We conclude: (1) A plaintiff in a personal injury action is not entitled to pre-verdict interest;[1] and (2) the court of appeals had subject matter jurisdiction over the cross-appeal from the circuit court's oral order denying pre-verdict interest.

The plaintiff-respondent/cross-appellant-petitioner Keith M. Johnson (Plaintiff) was injured when he fell approximately ninety-five feet down an access chute on a silo. According to the Plaintiff's testimony at trial, the accident occurred when a removable door giving access from the chute to the inside of the silo gave way when the Plaintiff put his weight on a ladder rung attached to the door. Defendant-appellant/cross-respondent Pearson Agri-Systems, Incorporated (Pearson) manufactured and installed the upper portion of the silo. Defendant-appellant/cross-respondent Railoc Company, Incorporated (Railoc) manufactured and installed the swing latches and rungs on the access chute doors.

The accident occurred on May 9, 1978. On August 25, 1980, the Plaintiff filed suit against Pearson and Railoc alleging both negligence and strict liability in tort.

---

[1] In this opinion we will use the term "pre-verdict" interest rather than the term "pre-judgment" interest for the reason that sec. 814.04(4), Stats., provides for interest from the time of the verdict until judgment is entered and thus is "pre-judgment" interest.

The Plaintiff prayed for compensatory damages of $1,000,000.

The matter was tried to a jury which returned a special verdict on December 23, 1981, finding Pearson fifty-three percent causally negligent, Railoc forty-seven percent causally negligent and the Plaintiff zero percent negligent. The jury awarded the Plaintiff damages of $264,664.90 including: $2,964.90 for medical expenses to the time of trial; $11,700 for loss of earning capacity to the time of trial; $130,000 for lost future earning capacity; $20,000 for past pain, suffering and disability; and $100,000 for future pain, suffering and disability.

On February 3, 1982, the Plaintiff filed an "amended motion for award of pre-judgment interest" requesting that he be awarded interest on the amount of the judgment accruing from the date of the accident through and including the date of entry of the judgment. At a hearing on motions after verdict held on February 16, 1982, Judge Hazlewood issued an oral decision denying the Plaintiff's request for pre-verdict interest.

Pearson and Railoc filed notices of appeal from the circuit court judgment with the court of appeals on April 9 and 16, respectively. On April 16, the Plaintiff filed a notice of cross-appeal from the circuit court's decision denying pre-verdict interest. On December 31, 1982, Railoc filed a motion with the court of appeals to dismiss the Plaintiff's cross-appeal on the ground that the court lacked subject matter jurisdiction over the cross-appeal because the order was not reduced to writing or entered as required by secs. 808.03(1), 807.11 or 809.10(1), Stats. On January 13, 1983, the court of appeals denied the motion to dismiss citing *State v. Alles*, 106 Wis. 2d 368, 316 N.W.2d 378 (1982) for the proposition that an oral order is properly reviewable by cross-appeal. The court of appeals issued its unpublished decision on the merits of the appeal and cross-appeal on

July 8, 1983. That decision affirmed the judgment over a number of evidentiary challenges raised by Pearson and Railoc and also affirmed the order denying the Plaintiff's request for pre-verdict interest. This court granted the Plaintiff's petition to review that part of the court of appeals decision affirming the denial of pre-verdict interest.

The common law rule defining the circumstances in which a party is entitled to pre-verdict interest in Wisconsin has its origins in the case of *Laycock v. Parker*, 103 Wis. 161, 79 N.W. 327 (1899). That case involved a suit by a builder for the unpaid balance on a building contract and for extras. The defendant claimed a set off against the amount owing for certain omissions and substitutions and for delay. The trial court gave judgment to the plaintiff for the amount claimed minus set offs plus interest on the judgment from the date of the commencement of the action. On appeal, the defendant argued that the court erred when it permitted the plaintiff to recover interest accruing prior to the verdict. After reviewing the cases from Wisconsin and other jurisdictions, this court affirmed the judgment of the trial court. The court stated that whereas earlier cases had sometimes permitted an award of pre-verdict interest "by way of punishment to a wrongdoer," more recent cases had recognized "[t]he idea of compensation to him who had been deprived of the use of his money." 103 Wis. at 179. The earlier cases had confined the award of pre-verdict interest to "strictly liquidated demands" so as not to impose the "punishment" of interest "if there were any uncertainty as to defendant's duty to excuse nonperformance of it." 103 Wis. at 179. More recent cases, the court said, had recognized "an intermediate class of demands between strictly liquidated ones . . . and those wholly unliquidated . . . ." 103 Wis. at 180.

The court concluded that an award of pre-verdict interest should not be limited to instances of liquidated damages, but should extend as well to those cases where the amount of damages is determinable or "liquidable," *i.e.*, where "there [is] a reasonably certain standard of measurement by the correct application of which one can ascertain the amount he owes . . . ." 103 Wis. at 186.

The rule announced in *Laycock*, that pre-verdict interest is recoverable only on damages that are either liquidated or liquidable has, with minor modifications, been consistently adhered to ever since. *See e.g., Necedah Mfg. Corp. v. Juneau County*, 206 Wis. 316, 237 N.W. 277, 240 N.W. 405 (1932); *Maslow Cooperage Corp. v. Weeks Pickle Co.*, 270 Wis. 179, 70 N.W. 577 (1955); *Giffen v. Tigerton Lumber Co.*, 26 Wis. 2d 327, 132 N.W.2d 572 (1965); *State ex rel. Schilling & Klingler v. Baird*, 65 Wis. 2d 394, 222 N.W.2d 666 (1974); *Olguin v. Allstate Ins. Co.*, 71 Wis. 2d 160, 237 N.W.2d 694 (1976).

The most frequently stated rationale for the rule is that if the amount of damages is either liquidated or determinable by reference to some objective standard, the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages. In *State ex rel. Schilling & Klingler v. Baird*, 65 Wis. 2d at 401–402, this Court stated: "[I]n order to recover interest there must be a fixed and determinate amount which could have been tendered and interest thereby stopped." (quoted *De Toro v. DI-LA-CH, Inc.*, 31 Wis. 2d 29, 34, 142 N.W.2d 192 (1966)). Similarly this Court said in *Wyandotte Chemicals Corp. v. Royal Electric Mfg.*, 66 Wis. 2d 577, 587, 225 N.W.2d 648 (1975): "[T]his court has denied interest recovery where the withholding party had no means available to

determine that amount which he had to tender in order to prevent interest from accruing."

This court discussed the rules governing the award of pre-verdict interest in the recent case of *Nelson v. Travelers Ins. Co.*, 102 Wis. 2d 159, 306 N.W.2d 71 (1981). The specific issue in that case did not involve pre-verdict interest. The question rather had to do with whether a prevailing plaintiff in a personal injury action was entitled to *post*-verdict interest under sec. 814.04, Stats. 1977, from the date of the trial fixing the amount of damages when the liability portion of the verdict was set aside on appeal and retried. The court held that interest accrued from the date of the first trial. In the course of the opinion the court discussed the rules governing pre-verdict interest. The court stated that if pre-verdict interest is "[v]iewed from the perspective of punishment instead of compensation, the traditional liquidated-unliquidated distinction is meaningful, since it would be unreasonable to punish one for failing to pay a debt, the amount of which is not only undermined [sic] but incapable of determination." 102 Wis. 2d at 167. However, the court further stated that punishment is not the proper rationale for awarding pre-verdict interest. "The interest obligation imposed upon the wrongdoer is not an additional penalty for the wrong but is simply the value of the use of the money—a value which should be accruing for the benefit of the plaintiff-creditor but, because of the nature of the debt, was accruing to the defendant-debtor instead." 102 Wis. 2d at 169. The court suggested that when pre-verdict interest is viewed as compensation, the liquidated-unliquidated distinction may no longer be tenable.

The legislature has provided for pre-judgment interest on money damages. Section 814.04(4), Stats. 1981–1982, provides for pre-judgment interest "at the rate of 12%

per year from the time of verdict, decision or report until judgment is entered . . ."

Post-judgment interest is provided for in sec. 815.05 (8), Stats. 1981–1982, which provides that "every execution upon a judgment for the recovery of money shall direct the collection of interest at the rate of 12% per year on the amount recovered from the date of entry thereof until paid." The legislature has also set out the conditions under which pre-verdict interest may be awarded in cases involving liquidated or unliquidated damages. The statute so providing is designed to encourage settlement of suits. Section 807.01(4), Stats. 1981–1982, passed as ch. 271, Laws of 1979 provides:

"**807.01. Settlement offers. . . .** (4) If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8)."

If this court were to accept plaintiff's arguments and allow for pre-verdict interest we would face serious policy decisions that could thwart the attempt of the legislature to encourage settlement of lawsuits. Should we allow twelve percent pre-verdict interest for instance to a plaintiff even though no settlement offer had been made by such plaintiff? There would be no incentive for a plaintiff to offer to settle in order to get pre-verdict interest. This would seem to be an unwarranted thwarting of a statute designed to encourage an end to litigation and to relieve overcrowded court calendars. To award pre-verdict interest where an offer made and rejected was more than what the jury finally awarded would likewise thwart the purpose of the statute. To

award pre-verdict interest where an offer was less than the verdict would then in effect amend a legislative act by doubling the amount the legislature had determined should be the incentive for encouraging the making and acceptance of settlement offers. This we decline to do.

The Plaintiff does not claim entitlement to pre-verdict interest under sec. 807.01(4), Stats. Nor does he claim to qualify for pre-verdict interest under the previous decisions of this Court. The Plaintiff predicates his argument rather on the alleged injustice caused by the defendants' having the benefit of the use of the amount of money in Plaintiff's damage award between the time of the accident and the time of trial. The Plaintiff argues that inflation and high interest are an economic reality which the courts must recognize. He argues that pre-verdict interest is simply a counterbalance to compensate the Plaintiff for the erosion of the buying power of his damages between the time of the accident and the trial. Plaintiff contends that denial of pre-verdict interest unjustly punishes a plaintiff and rewards a defendant.

The basic premise behind the Plaintiff's argument is the "time" or "use value theory of money." This is simply an acknowledgement of the undisputed fact that a dollar received today is worth more than a dollar received sometime in the future. *See Anderson v. Labor & Industry Rev. Comm.,* 111 Wis. 2d 245, 259, 330 N.W.2d 594 (1983); Brennan, *"Prejudgment Interest In Wisconsin Personal Injury Cases,"* 56 Wisconsin Bar Bulletin 18 (Aug., 1983). The law currently recognizes the time value of money by instructing juries to discount compensation awarded for future injuries to present value at the time of the award.

Both in his amended motion for pre-verdict interest and in this court, the Plaintiff requests that the interest award be calculated at a rate representing the average interest rate available on certificates of deposit for the period of time between the date of the accident and the

date of entry of judgment. Attached to the motion was an affidavit from a bank vice president stating that the average interest available on ninety day certificates of deposit during the period in question was 12.05 percent compounded quarterly, yielding an annual rate of approximately 12.73 percent. The affidavit further stated that $264,000 invested at this rate between the date of the accident on May 4, 1978, through December 23, 1981, would yield a total return of $142,473.44. This is the amount the Plaintiff seeks in pre-verdict interest. In order to evaluate the Plaintiff's claim that he is under-compensated by this amount, we must examine each of the items of damages awarded by the jury.

In its special verdict, the jury awarded five separate items of damages. The two largest items were compensation for future losses, that is, losses occurring after the date of the trial as a result of the accident. The Plaintiff was awarded $130,000 for loss of future earning capacity and $100,000 for future pain, suffering and disability. The Plaintiff argues that he became entitled to this $230,000 at the time of the accident and that the only way he can be made whole is to award him interest on this amount from the time of the accident to the time of trial.

The Plaintiff introduced expert testimony at trial concerning future lost earnings and future pain and suffering. This testimony included an explanation of the concept of present value. In its instructions to the jury regarding damages for future losses, the trial court said:

"In passing on the question of future damages as a result of his injuries you may take into consideration the fact that at this time Keith Johnson, the plaintiff, has a life expectancy of 40.8 years. . . .

"Now, in determining the amount of damages for any loss which will be incurred in the future it is the duty

of you, the jury, to ascertain and fix the present worth in dollars of such future damages.

"A lump sum of money received today may be worth more than the same sum paid in installments over a period of months or years because a sum received today can be invested and earn money at current interest rates. You have heard evidence on that topic which should be evaluated and considered by you in determining the present value of any award of future damages."

We must assume the jury followed the instructions. In awarding to the Plaintiff damages for future losses discounted to present value at the time of trial, the jury fully compensated the Plaintiff for his future losses. Indeed, it is the very principle upon which the Plaintiff grounds his case—the time value theory of money—that guarantees that this is so. If the Plaintiff were to be given an award of interest on the damages for future injuries retroactive to the date of the accident, he would be overcompensated.[2] This can be illustrated with a simple example.

Plaintiff has an accident in year one. Trial is held in year two at which time it is determined that he will suffer a loss in year three as a result of the accident which will have a value of $100 in year three. In order to compensate the plaintiff for the loss at the time it occurs, that is, in year three we must pay him the full amount of the loss or $100. However, if we compensate him for the future loss at the time of trial, we award him an amount equal to $100 discounted to present value in year two, that is, an amount which if put to interest in year two will equal $100 in year three. This

---

[2] Had the jury calculated damages for losses occurring after trial discounted to present value *at the time of the accident* (instead of present value at the time of the trial) but awarded at the time of trial, he could validly claim entitlement to pre-verdict interest on that amount. *See, In re Air Crash Disaster Near Chicago, Ill.,* 644 F.2d 633 (7th Cir. 1981).

discounting recognizes the fact that the plaintiff will have the use of the money from the time of the trial until the time the loss actually arises. If the compensation were paid at the time of the accident, allowing the plaintiff the use of the money from year one, the award would have to be further discounted to its present value in year one.

Counsel for the Plaintiff in this action argued at oral argument that the Plaintiff is entitled to pre-verdict interest on his damages for future losses because the jury would have arrived at the same figure had it made the calculation as of the time of the accident. He argued that the jury would have arrived at the same figure as compensation for losses occurring after December 23, 1981, regardless of whether the calculation was made in December of 1981 when the case was tried or in May of 1978 when the accident occurred. While this is true so far as it goes, it ignores the very principle upon which the Plaintiff bases his argument—that a dollar *paid* now is worth more than a dollar paid in the future. The jury determined that the Plaintiff's future lost earnings and future pain, suffering and disability had a present value of $230,000 in December of 1981. The present value in May of 1978 of $230,000 in December of 1981 is something less than $230,000. To give the Plaintiff interest on the $230,000 from the date of the accident (which is the equivalent of having paid the Plaintiff $230,000 at the time of the accident) is to give him more than the jury intended he receive.

A number of other courts and commentators have noted the overcompensation that would result if pre-verdict interest were permitted on damages for future losses discounted to present value at the time of trial. *Canavin v. Pacific Southwest Airlines,* 148 Cal. App. 3d 512, 528, 196 Cal. Rptr. 82, 92 (Cal. Ct. App. 1983); *In*

*re Air Crash Disaster Near Chicago, Ill.,* 644 F.2d 633, 643 (7th Cir. 1981) ; Note, *Prejudgment Interest: An Element of Full Compensation In Wrongful Death Cases* 1981 U. Ill. L. Rev. 453, 482 (1981) ; Note, *Prejudgment Interest As An Element of Damages: Proposed Solutions for A Colorado Problem,* 49 Col. L. Rev. 335, 340 (1978). We conclude that a Plaintiff is fully compensated for future injuries if he is paid at the time of trial an amount equal to the value of the future losses discounted to present value at the time of trial. Since that is what was done in this case, there is no injustice in denying Plaintiff's request for pre-verdict interest on the damages for future pain and suffering and future lost earnings.

The Plaintiff was also awarded $20,000 for past pain, suffering and disability, that is, pain, suffering and disability between the accident and the time of trial. This is the sort of unliquidated and undeterminable damage award which under the rules established by this court does not qualify for pre-verdict interest. The Plaintiff asserts that denial of pre-verdict interest on this amount will result in less than full compensation.

The Supreme Court of California considered and rejected a claim for pre-verdict interest in damages for "intangible" injuries in *Greater Westchester v. City of Los Angeles,* 26 Cal. 3d 86, 603 P.2d 1329, 160 Cal. Rptr. 733 (1979). The court stated that the amount of such damages "is necessarily left to the subjective discretion of the trier of fact." 26 Cal. 3d at 103, 603 P.2d at 1338, 160 Cal. Rptr. at 741. Because of the imprecise nature of damages for such intangibles, allowing retroactive interest on such damages only "adds uncertain conjecture to speculation." The court pointed out that where the injury is of a continuing nature it is difficult to determine when any particular increment of intangible loss arose. Finally, the court noted that "a fact finder,

in assessing a claim for general damages for physical, mental and emotional suffering, possesses full authority to consider the duration of the alleged suffering. Accordingly, the disallowance of any interest on such a claim does not deprive the claimant of compensation for an element of actual damage. To the contrary, its allowance, in fact, may in a given case create a double recovery." 26 Cal. 3rd at 103, 603 P.2d at 1338, 160 Cal. Rptr. at 741.

There is an additional reason not mentioned by the California Supreme Court for not awarding pre-verdict interest on damages for intangible losses such as pain, suffering and disability in the absence of a legislative directive. In cases where the monetary value of the loss is determined on a subjective basis by the jury rather than by reference to an objective measure, there is built into the method for valuing the loss an adjustment for inflation up to the time of trial. This is because the loss is necessarily valued based on the value of a dollar at the time of trial, rather than on the value of a dollar at the time of the loss. When a jury sitting in December, 1981 places a monetary value of $20,000 on the Plaintiff's pain and suffering in May of 1978, it is obviously expressing the value of the loss in 1981 dollars. There is no need to compensate by way of interest for the deflated value of the Plaintiff's award between the time of the accident and the time of trial because the measure of the loss is expressed in inflated dollars. Conversely, in a period of deflation the value of the loss would be expressed in terms of the deflated dollars at the time of trial.

The common-law rule distinguishing between damages which are determined or determinable and damages which are not rests on a firm principle. If a plaintiff suffers a loss with a determinable value—$100 damage

to property for example—the loss has a fixed dollar value at the time of the accident. If trial and compensation are delayed for one year, and the plaintiff is not awarded pre-verdict interest, he will be undercompensated because of the effects of inflation. The $100 paid to the plaintiff at the time of trial is not worth as much as the $100 loss at the time of the accident.

However, a different situation is presented when the loss is one with no determinable dollar value. If a plaintiff's pain and suffering were somehow valued *at the time of the accident* at $100 but payment was delayed for a year until trial, the plaintiff would have a valid claim for interest to compensate for inflation. However, so long as the loss is valued according to the value of a dollar at the time of trial (and we have no reason to suppose this one was not), there is no need to make an adjustment for inflation.

The Plaintiff was also awarded damages of $11,700 for loss of earning capacity between the time of the accident and the time of trial. This amount is supported by the evidence and not challenged on review. This is the type of loss which might arguably qualify for pre-verdict interest if the Plaintiff were able to prove that the loss had a determinable value at some point prior to trial. We conclude that pre-verdict interest is not appropriate in this case for a number of reasons. Although we do not and cannot know precisely how the jury arrived at the sum of $11,700 for past loss of earning capacity, it is possible that the jury took into account the effects of inflation in making the award. The Plaintiff introduced the expert testimony of an economist at trial who testified as to the effects of inflation. That testimony was before the jury when it made its award. If the jury chose not to compensate the Plaintiff for the effects of inflation, we may reasonably infer that it concluded the Plaintiff was not entitled to such compensation.

Furthermore to award the Plaintiff interest on the entire amount from the date of the accident would be to give him more than the jury intended. Although it is not clear how the jury determined the damages at $11,700 it is clear that the Plaintiff's lost earnings did not occur all at once, but accrued gradually over the course of three and one-half years between the accident and the trial. To award interest on the entire sum of $11,700 from the date of the accident would be to treat the Plaintiff as if he suffered the whole loss at that time. This would constitute overcompensation for the Plaintiff's actual losses as found by the jury.

The final item of damages is for $2,964.90 for medical expenses between the time of the accident and the time of trial. This amount was stipulated to by the parties and entered by the court in the special verdict.

Medical expenses may be the sort of determined or determinable loss for which a party can usually receive pre-verdict interest under the rules previously established by this court, assuming there is no challenge to the reasonableness of the charges or necessity for treatment. We decline to single out this type of damage for allowance of pre-verdict interest where such claim is coupled with non-liquidable claims such as is the case here. It would run counter to the purpose of the settlement offer statute sec. 807.01(4), Stats., by allowing pre-verdict interest even though no settlement offer had been made. In addition, interest on any fixed medical expenses in this case is precluded under the rule of *City of Franklin v. Badger Ford Truck Sales,* 58 Wis. 2d 641, 657, 207 N.W.2d 866 (1973) which prohibits pre-verdict interest where the existence of multiple defendants prevents any single defendant from knowing prior to trial the precise amount of his ultimate liability.

In his reply brief before this court, the Plaintiff stated: "The policy considerations involved in deciding

[the issues raised by this case] cannot be adequately addressed solely by way of evidence which could appropriately be submitted to a jury in the trial of a personal injury lawsuit." We agree with this statement. A decision to allow pre-verdict interest on unliquidated tort claims would require a study of complex social and economic factors and policy considerations which this Court is not equipped to make. We conclude that such a study and decision is better left to the legislature.

The second issue is whether the court of appeals had subject matter jurisdiction over the Plaintiff's cross-appeal. Railoc argues that the court of appeals lacked subject matter jurisdiction because the circuit court's decision denying the Plaintiff's motion for pre-verdict interest was announced orally from the bench and was not a final order under sec. 808.03(1), Stats. 1981–1982.[3]

This court faced a similar situation in *State v. Alles*, 106 Wis. 2d 368, 316 N.W.2d 378 (1982). In that case the defendant had appealed his criminal conviction and the state sought review by cross-appeal of the trial court's refusal to give a jury instruction which had been requested by the state. Although the order denying the jury instruction was not final, this court held that it was reviewable by cross-appeal. This court stated: "Once the appellant has been granted an appeal, either on the basis of right or in the court's discretion, the respondent who

---

[3] "**808.03. Appeals to the court of appeals.** (1) APPEALS AS OF RIGHT. A final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment or order entered in accordance with s. 806.06(1)(b) or 807.11(2) or a disposition recorded in docket entries in traffic regulation cases and municipal ordinance violation cases prosecuted in circuit court which disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding."

was formerly required to bring a notice of review may now utilize the cross-appeal procedure and have non-final orders reviewed." 106 Wis. 2d at 388. We conclude that the court of appeals had subject matter jurisdiction of the Plaintiff's cross-appeal.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J., dissents.

WILLIAM A. BABLITCH, J. (concurring). The economics of the issues presented in this case have not been adequately explored by the parties, and may well be more appropriately addressed by the legislature. However, should the legislature fail to address the problems and issues raised in the dissent, I believe this court may have to address these issues again in an appropriate case.

WILLIAM G. CALLOW, J. (dissenting). I disagree with the majority's decision that preverdict interest should not be awarded in this action. While I agree that preverdict interest should not be awarded on amounts representing future losses,[1] I believe that preverdict interest should be awarded for past losses. The majority's decision is contrary to the current trend supporting the award of preverdict interest and, I believe, is inequitable to tort plaintiffs.

---

[1] I agree with the majority's analysis which shows that preverdict interest on future losses would lead to overcompensation. So long as the plaintiff has the use of the money, he or she is not being deprived of lost interest. As the majority notes, jury awards representing future losses are discounted to their present value. I believe, however, that if it is proper to discount future losses to account for the plaintiff's expected interest earnings, we should compensate the plaintiff for the interest earnings he or she could have received on the award of damages for past injuries. Just as equity demands that the future interest be removed from the award, equity also demands that lost interest be replaced.

As the majority recognizes, the award of preverdict interest is founded on the notion that the plaintiff is deprived of the use of the money he or she is ultimately awarded. (Pages 774–75.) As we noted in *Nelson v. Travelers Insurance Co.*, 102 Wis. 2d 159, 169, 306 N.W. 2d 71 (1981):

"We are no longer firmly convinced that only the unliquidated or unliquidable character of damages should determine whether interest is payable on the amount due. It is true that the kinds of damages associated with personal injury suits epitomize the concept of unliquidated damages, but the person injured is no less entitled to compensation because his injuries are initially in the nonpecuniary realm of pain and suffering, emotional distress, loss of society, or the loss of use of a limb or limbs, to name a few such categories. Moreover, to the extent that those injuries are ultimately compensable, the wrongdoer who must make compensation has the use of the money until payment is made (and he has such use whether he is aware of the amount due or not). Conversely, the plaintiff, who *should* have the money, does not have it and thus cannot put it to use . . . . The interest obligation imposed upon the wrongdoer is not an additional penalty for the wrong but is simply the value of the use of the money—a value which should be accruing for the benefit of the plaintiff-creditor but, because of the nature of the debt, was accruing to the defendant-debtor instead." (Emphasis in original.)

Thus, the award of preverdict interest has the equitable purpose of placing the plaintiff in the same position he or she would have been had he or she had use of the money from the time the injury occurred.

While the majority concedes that plaintiffs may be deprived of the full value of their monetary award, the majority mistakenly concludes that plaintiffs are somehow made whole through the jury award process. The majority asserts that juries make their award in dollar amounts which match the inflated value of money at that

time. Even assuming that juries consider inflation rates when making their awards, the compensation due the plaintiff for the loss of use of money includes more than the effects of inflation. If a plaintiff were able to invest an award from the date of injury, current interest rates would exceed the rate of inflation. Further, the plaintiff often must bear the additional cost of borrowed money, which usually is subject to high interest rates. Finally, I would question the fairness of permitting juries to exercise their discretion as to how much compensation will be awarded for the lost value of money. This means that some plaintiffs will be compensated and some will not, and that those who are compensated will be awarded at differing rates.

The majority also rejects the award of preverdict interest for lost earning capacity. The majority concludes that, while lost earning capacity is a fairly determinable amount, it should not be subject to preverdict interest because the jury *may have* taken inflation into account and because the calculation of such interest might lead to overcompensation. As I pointed out above, it is only speculation whether the jury inflated the award, and even if it did, this would not necessarily fully compensate the plaintiff. The majority correctly points out that awarding preverdict interest on the full amount of earning loss might lead to overcompensation because earning losses only accrue over time. However, there are formulas applied by courts to ensure that such overcompensation does not occur. *See, e.g., In Re Pago Pago Aircrash of January 30, 1974,* 525 F. Supp. 1007, 1021–24 (C.D. Cal. 1981).

Finally, the majority rejects preverdict interest on medical expenses. Medical expenses constitute a liquidable amount upon which preverdict interest could be calculated with some certainty. In most cases, the amount of medical expenses is fixed fairly early on in the law-

suit, thereby permitting the liable parties to know what amounts are payable.[2] Even if the defendants do not know exactly what share each will ultimately have to bear, this should not preclude the plaintiff from recovering preverdict interest to compensate for the lost use of that money.

The majority also asserts that the award of preverdict interest would thwart the legislative scheme under sec. 807.01, Stats. I disagree with this conclusion. The majority notes that the purpose of this provision is to promote settlement. I believe that an extension of preverdict interest to include the period from the time of injury to the time a settlement offer is made under sec. 807.01 would further promote, rather than thwart, the settlement process. If interest were to run from the date of injury, the defendant would have an incentive to make a settlement offer early in the litigation process. I would propose that, if the plaintiff rejected the offer and recovered an amount less than the offer, interest would run only from the date of injury to the date the settlement offer was made. This system would promote early

---

[2] The majority uses as an example a property loss of $100 to show the need for compensation (*see* pp. 779–80). Medical expenses are like such property losses in that the amount, whether it be for surgery to fix a broken arm or work to repair a bent fender on a car, is determinable. Using the majority's logic, the lost value of an amount representing medical expenses—like property loss—must be awarded to compensate the plaintiff.

The majority, in rejecting an award of preverdict interest on pain and suffering, relied upon *Greater Westchester Homeowners Assn. v. City of Los Angeles*, 26 Cal. 3d 86, 160 Cal. Rptr. 733, 603 P.2d 1329 (1979). I would note in this regard that *Greater Westchester* permits the award of preverdict interest on paid medical expenses and lost earnings because on those amounts the plaintiff "has been deprived of the use of his money and 'the accretion of wealth which [the] money . . . could have produced during [the] period of loss.'" *Id.* at 109, 160 Cal. Rptr. at 745, 603 P.2d at 1341. *See also In Re Pago Pago Aircrash of January 30, 1974*, 525 F. Supp. 1007, 1019 (C.D. Cal. 1981).

settlement but would still partially compensate the plaintiff for the lost use of his or her money. I do not believe plaintiffs will delay the suit simply to permit interest to accrue. First, most plaintiffs want their money as soon as possible so they can use it for their needs. Second, plaintiffs probably could, if they did not need the money currently, invest the money at an interest rate higher than the statutory rate. Third, plaintiffs would be remiss in not pursuing their claims in a timely fashion because stale claims are harder to prove.

It appears to me that the majority has recognized the basic unfairness of permitting the defendant use of money rightfully owed the plaintiff and the concomitant loss to the plaintiff in not having use of the money. Despite this, the majority "finds" built-in correcting mechanisms in the jury process and then raises problems with administering a compensatory scheme in conjunction with sec. 807.01, Stats. I believe that we can and should fashion a remedy which compensates plaintiffs for lost use of money and which furthers the legislature's goal of promoting the settlement of cases.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN joins in this dissenting opinion.