Robert FRITSCHE, and Karen Fritsche, Plaintiffs-Respondents-Cross Respondents-Cross Appellants,

v.

FORD MOTOR CREDIT COMPANY, and Insurance Company of North America, Defendants,

RURAL MUTUAL INSURANCE COMPANY, Defendant-Appellant-Cross Respondent,

IOWA INSURANCE GUARANTY ASSOCIATION, Defendant-Respondent-Cross Appellant,

and ESTATE OF Carole L. MCMULLEN, Defendant-Respondent.

Court of Appeals

*No. 90-2720. Submitted on briefs December 10, 1991.—Decided September 24, 1992.*

(Also reported in 491 N.W.2d 119.)

For the defendant-appellant-cross respondent the cause was submitted on the briefs of *Mark W. Andrews* of *Winner, Wixson & Pernitz* of Madison.

For the plaintiffs-respondents-cross respondents-cross appellants the cause was submitted on the briefs of

*Gregory J. Egan* of *Parke, O'Flaherty, Heim, Egan & Koby, Ltd.* of La Crosse.

For the defendant-respondent-cross appellant the cause was submitted on the briefs of *Gregory B. Conway* and *Donald L. Romundson* of *Liebmann, Conway, Olcjniczak & Jerry, S.C.* of Green Bay.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J. An automobile accident occurred in Wisconsin between vehicles driven by Carole McMullen and Robert Fritsche. McMullen was killed and Fritsche was injured. Fritsche and his wife began this action. McMullen's liability was conceded.

McMullen was an Iowa resident. She was driving an automobile which she had leased in Illinois. The lessor had assigned the lease to Ford Motor Credit Company. Ford carried liability insurance with Insurance Company of North America. McMullen had obtained liability coverage for the leased automobile with Iowa National Mutual Insurance Company, but Iowa National became insolvent. Under Iowa law, the Iowa Insurance Guaranty Association assumed the liability of Iowa National, but with various statutory obligations and protections.

The Fritsches carried automobile liability insurance for their two automobiles with Rural Mutual Insurance Company. The policy included uninsured motorist coverage, and showed a liability limit for this coverage of $25,000.

Rural Mutual Insurance Company appeals from the order declaring the rights and status of the parties, and from an order reconsidering the first order. Iowa Insurance Guaranty Association cross-appeals from the denial of its motion to credit it with $25,000 paid to the plaintiff Fritsches by Ford Motor Credit Company. Robert and Karen Fritsche cross-appeal from the denial of their

motion for interest on their verdict pursuant to sec. 628.46, Stats., which requires insurers to timely pay claims or pay twelve percent interest on the claims until paid.

We affirm all of the trial court's determinations with the exception of its order setting Rural Mutual's liability at $50,000 and its denial of interest on the Fritsches' verdict. We therefore affirm in part and reverse in part.

## HISTORY

The Fritsches sued the estate of Carole McMullen, Ford Motor Credit Company (Ford), Insurance Company of North America (INA), Iowa Insurance Guaranty Association (Iowa), and Rural Mutual Insurance Company (Rural). Except for the estate, all defendants filed motions to dismiss, though on conflicting grounds.

The Fritsches brought a motion for declaration of rights and status of parties to settle coverage and policy limit issues prior to trial. On June 23, 1988, the court ordered that Iowa was dismissed but required to defend the estate's interests. Because INA's policy did not provide liability coverage to a lessee of the vehicle, INA was dismissed. Ford's liability was limited to $25,000 and Iowa's liability was limited to $75,000, the difference between Iowa National's policy limit of $100,000 and Ford's statutory obligation of $25,000. Rural's liability to the Fritsches was limited to $25,000 under its uninsured motorist coverage. This amount was in addition to any amounts recovered from Ford and Iowa. The net result of the June 23, 1988 order was that the Fritsches could recover a maximum of $125,000, plus any amount recoverable from the estate.

In late 1989, Ford paid the Fritsches its $25,000 statutory obligation and was dismissed. On March 5, 1990, Iowa asked the court to reconsider its June 23, 1988 order. The court did so, and concluded that Rural's liability to the Fritsches was $50,000, an increase of $25,000. Because of that conclusion, the court modified its order as to Iowa, and determined that its liability to the Fritsches was for all amounts recovered in excess of $75,000, up to a maximum of $125,000.

Because liability was conceded, the jury only considered the Fritsches' damages. It awarded a total of $120,124.80. The trial court rendered judgment against Rural for $50,000, against Iowa for $45,024.80, and against the estate for $121,973.64. Any amounts paid by Ford, Rural or Iowa would be credited against the estate's liability.

Rural appeals. Iowa and the Fritsches cross-appeal.

## RURAL'S APPEAL

Rural argues that because McMullen *was* insured at the time of the accident, it had no liability to the Fritsches under the uninsured motorist coverage in its policy. It asserts that the trial court erred by considering Iowa's motion to increase Rural's uninsured motorist coverage from $25,000 to $50,000. It also contends that even if McMullen were uninsured, and the trial court properly considered Iowa's motion, the court erred by concluding that its uninsured motorist limit was $50,000.

### Ford's Liability

Rural's uninsured motorist coverage defines an uninsured motor vehicle as one which is "not insured by a **bodily injury** liability bond or policy at the time of

the accident," or is "insured by a **bodily injury** liability bond or policy at the time of the accident but the company denies coverage or is or becomes insolvent."[1] But the policy also provides: "**Uninsured Motor Vehicle,** however, does not mean a vehicle . . . owned or operated by a self-insurer as contemplated by any financial responsibility law, motor carrier law, or similar law[.]"

Section 344.52(1), Stats., provides: "Whenever any motor vehicle rented for compensation outside this state is operated in this state, the lessor of such motor vehicle is directly liable for all damages [not exceeding $25,000] to persons or property caused by the negligent operation of such rented vehicle . . .." Rural argues that the effect of sec. 344.52(1) is to make Ford a self-insurer. Thus, by virtue of Rural's policy exclusion for self-insurers, the McMullen vehicle would be insured. Rural then would not be liable to the Fritsches under the uninsured motorist section of their policy with Rural.

The flaw in this reasoning is that though Ford may be liable to the Fritsches by virtue of sec. 344.52(1), Stats., that does not make Ford a self-insurer. Rural's policy does not contain a definition of "self-insurer," other than to speak of a self-insurer "as contemplated by any financial responsibility law, motor carrier law, or similar law."

Section 344.16, Stats., which is contained in a chapter entitled "**Vehicles—Financial Responsibility,**" provides that any person in whose name more than twenty-five vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance from the secretary of transportation. The secretary may issue

---

[1] Section 632.32, Stats., requires that the second of these definitions be included in the uninsured motorist clause of an automobile insurance policy. Also, in the references to Rural's policy, the emphasis appears in the original.

the certificate if convinced of the substantial solvency of the applicant.

There is no evidence that Ford has obtained a certificate of self-insurance in Wisconsin. Rural concedes that the definition of "self-insurance" that it chose from BLACK'S LAW DICTIONARY 1220 (5th ed. 1979) requires that Ford set aside a fund to meet losses, and that there is no evidence of such a fund. It argues that sec. 344.52, Stats., required Ford to set aside such a fund. But there is no such requirement anywhere in that statute. We conclude that Ford's involvement in the McMullen lease transaction did not result in her vehicle becoming insured for the purposes of Rural's uninsured motorist coverage.

### · *Iowa*

Rural next asserts that because Iowa Insurance Guaranty Association "stepped into the shoes" of Iowa National Mutual Insurance Company, Iowa Insurance Guaranty Association's coverage was the equivalent of a liability insurance policy. Thus, Rural argues, the McMullen vehicle was an insured vehicle for the purposes of the Rural-Fritsche policy. Therefore, the Fritsches' claim against Rural should have been dismissed.

Both Rural's policy and sec. 632.32(4)(a)2., Stats., provide otherwise. The statute provides: "In this paragraph 'uninsured motor vehicle' also includes: a. An insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction." Rural's policy provides: "**Uninsured Motor Vehicle** means a **motor vehicle** which is insured by a **bodily injury** liability bond or policy at the time of the accident but the com-

pany denies coverage or is or becomes insolvent." Rural argues that its policy language and sec. 632.32(4)(a)2.a., Stats., should not be applicable because the insolvency of Iowa National did not result in a situation where there were no funds available to cover that insolvency. But were we to accept that reasoning, we would to a large extent repeal the statute, and excise the provision from Rural's policy.

All states have some form of a guaranty association, most patterned after a model bill. Note, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause.* 74 IOWA L. REV. 927, 934 (1989). Rural's interpretation of its policy would result in the disputed section of its policy rarely, if ever, being applicable. Nor do we think that the Wisconsin Legislature would enact a useless statute. We therefore conclude that because, in the language of the policy and the statute, the McMullen vehicle was insured by a bodily injury liability policy at the time of the accident but the company is insolvent, the McMullen vehicle was uninsured despite Iowa Insurance Guaranty Association's coverage.

## *INA*

Rural asserts that INA provided liability coverage for the accident, and therefore, the McMullen vehicle was not uninsured. But the Fritsches' complaint against INA was dismissed by the court's June 23, 1988 order. As between the other parties and INA, the order disposed of the entire matter in litigation. That portion of the order was therefore final, and appealable as of right. Section 808.03(1), Stats. The time for Rural to appeal that order expired ninety days after its entry. Section

808.04(1), Stats. Rural's argument that INA should not have been dismissed is therefore untimely.

## MOTION FOR RECONSIDERATION

### *Finality*

Rural argues that the trial court could not reconsider its June 23, 1988 order because the order was final as to INA. But we have held that an order was not final as to a third defendant merely because the order was final as to two other defendants. *Culbert v. Young,* 140 Wis. 2d 821, 825, 412 N.W.2d 551, 553 (Ct. App. 1987).[2] Rural fares no better. After the court entered its June 23, 1988 order, questions of McMullen's liability and the extent of damages remained. Rural's liability hinged on McMullen being found more negligent than Fritsche, and a finding as to the Fritsches' damages. Thus, the June 23, 1988 order was not final as to Rural.

Rural argues that *Culbert* involved a summary judgment while this case involves a declaratory judgment and that the issues as between the parties are inexorably intertwined. Section 806.04(1), Stats., a part of our Uniform Declaratory Judgments Act, was amended by supreme court order of February 19, 1992, "to *clarify* that a declaratory judgment is not appealable as of right unless it disposes of the entire matter in litigation as to one or more of the parties." Judicial Council Note, 1991 Wis. Stat. Ann. sec. 806.04 (West Supp 1992) (emphasis added). We therefore treat summary judgments no differently than other judgments for finality inquiries. Nor

---

[2]*See also Westport Sand & Gravel Co. v. Holdmann,* 159 Wis. 2d 613, 464 N.W.2d 676 (Ct. App. 1990), for further explanation of the *Culbert* rule.

do we accept Rural's attempt to distinguish *Culbert* because the issues are intertwined here. We decline to complicate the question of judgment finality by making the answer to that question hinge on the degree to which cases against different defendants are intertwined. "A simple rule is preferable to a more complicated one." *Schmidt v. Smith,* 162 Wis. 2d 363, 372, 469 N.W.2d 855, 858 (Ct. App. 1991). The trial court was not precluded by questions of finality from reconsidering its June 23, 1988 order.

### As Sec. 806.07, Stats., Motion

Rural contends that because there is no statutory authority to bring a motion for reconsideration, the motion must have been brought under sec. 806.07, Stats. It then concludes that Iowa met none of the requirements of that statute.

Rural is correct in part. While sec. 805.17(3), Stats., entitled "RECONSIDERATION MOTIONS," permits such a motion, that section applies to trials to the court. Nonetheless, motions for reconsideration are common in Wisconsin's trial courts and have become part of our common law. We reviewed such a motion in *Schmidt.* 162 Wis. 2d at 372, 469 N.W.2d at 858.

Iowa's motion was entitled "Motion for Reconsideration." The ground for the motion was that the court was not asked the limits of Rural's policy prior to the June 23, 1988 order. The reason for the motion was the Fritsches' motion to amend its pleadings in light of *Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985), which held that uninsured motorist coverages were stackable. Thus, under the new

theory advanced by the Fritsches and Iowa, Rural's liability would be $50,000, rather than $25,000. Neither Fritsche nor Iowa suggested that the motions were brought under sec. 806.07, Stats. We see no reason why a trial court, having concluded that a prior nonfinal ruling in a pending case is wrong, cannot correct that error by reconsideration. We conclude that Iowa's motion is not governed by sec. 806.07.

### Waiver and Estoppel

Rural asserts that Iowa lost its right to move for reconsideration by waiver or estoppel because Rural was prejudiced by a reconsideration at that late date. Rural argues that with a maximum liability of $25,000, and the knowledge that it would share any liability with Ford, it decided not to appeal the court's June 23, 1988 order. Had it known that its exposure was $50,000, it would have appealed.

Where the facts relating to the conduct are admitted or clearly established, waiver becomes a question of law. *Rural Mut. Ins. Co. v. Peterson,* 134 Wis. 2d 165, 180, 395 N.W.2d 776, 782 (1986). We review questions of law *de novo. Winkelman v. Beloit Memorial Hosp.,* 168 Wis. 2d 12, 24, 483 N.W.2d 211, 216 (1992). Nonetheless, we agree with the trial court. Rural could have appealed INA's dismissal but declined to do so. *Welch* had been decided three-and-one-half years earlier. Rural should have known of its potential $50,000 liability. "Waiver is the voluntary and intentional relinquishment of a known right." *Reckner v. Reckner,* 105 Wis. 2d 425, 435, 314 N.W.2d 159, 164 (Ct. App. 1981). We do not see how considerations of waiver prevented Iowa from moving

for reconsideration after Rural's opportunity to appeal the final portion of the June 23, 1988 order expired.

Whether to apply estoppel is within the discretion of the trial court. *Gonzalez v. Teskey,* 160 Wis. 2d 1, 13, 465 N.W.2d 525, 530 (Ct. App. 1990). Estoppel may be applied where one's action or inaction induces reliance by another to his detriment. *Id.* at 12, 465 N.W.2d at 530. Rural points to Iowa's failure to timely pursue its motion for reconsideration as the conduct upon which it relied. But under this theory, Iowa would have to seek reconsideration and the court render its decision before the time ran for Rural to appeal the June 23, 1988 order. Estoppel would bar motions for reconsideration made after about two months from the original dismissal order. Trial courts would be forced to proceed to trial under rulings which they later concluded were erroneous. To be of any value, such a rule would also have to be recognized by appellate courts, or the admitted erroneous ruling would be reversed on appeal. We are not prepared to take that step.

The trial court considered that Rural was not prejudiced by the order on reconsideration because Rural's policy limits were $50,000, and Rural was not in a position where it had lost something as a result of the June 23, 1988 order. We conclude that the trial court did not exceed its discretion by reconsidering its June 23, 1988 order.

*Policy Limits*

First Reducing Clause

Rural also appeals from the trial court's order determining that its uninsured motorist policy limit was

$50,000. Rural contends that *Welch* and *Burns v. Milwaukee Mut. Ins. Co.,* 121 Wis. 2d 574, 360 N.W.2d 61 (Ct. App. 1984), do not require that its uninsured motorist coverages for both Fritsche vehicles be stacked. It cites a passage from *Burns* where this court said: "Milwaukee Mutual's uninsured motorist coverages may therefore be stacked unless another provision in the policy prohibits aggregating those coverages." *Id.* at 578-79, 360 N.W.2d at 64. Rural points to a provision in its policy which states: "We will pay no more than these maximums regardless of the number of vehicles described in the Declarations, **insured persons,** claims, claimants, policies, or vehicles involved in the accident." The Fritsches respond that *Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 405 N.W.2d 327 (1987), holds that reducing clauses in uninsured motorist policies are void.

The Fritsches' assertion that *Nicholson* voided reducing clauses in uninsured motorist policies is incorrect. *Nicholson* does not contain this broad holding. But the supreme court has considered whether sec. 631.43, Stats., a statute prohibiting "other insurance" reductions in insurance policies, requires the aggregation of uninsured motorist coverage. In *Welch,* the court said: "We held that the legislature, in enacting sec. 631.43(1), Stats., clearly and unambiguously voided reducing clauses which attempt to prevent stacking of uninsured motorist protection." 122 Wis. 2d at 176, 361 N.W.2d at 682 (citation omitted). We conclude that *Welch* would require the stacking of Rural's uninsured motorist coverages but for Rural's second contention.

## Second Reducing Clause

Rural also argues that another reducing clause in its policy limits its maximum liability to $25,000. That

clause provides: "Any amounts payable will be reduced by: (1) a payment made by the owner or operator of the uninsured motor vehicle or organization which may be legally liable[.]" Because Ford is an organization which was legally liable to the Fritsches under sec. 344.52(1), Stats., Rural asserts that Ford's $25,000 payment must be deducted from its obligation to the Fritsches.

The Fritsches respond that Rural has raised this policy defense for the first time on appeal. Iowa responds that *Niemann v. Badger Mut. Ins. Co.,* 143 Wis. 2d 73, 420 N.W.2d 378 (Ct. App. 1988), held that a reducing clause of this sort is contrary to sec. 632.32(4)(a), Stats. We reject both assertions.

Rural raised this policy defense before the trial court. At the hearing on Iowa's reconsideration motion, Rural's attorney noted that prior stacking cases involved situations where no other source of recovery was available. Here, he noted, Ford had already paid $25,000. He concluded: "So, I think there is an issue as to whether stacking would even be applicable in this case." This argument was repeated at motions after verdict.

In *Niemann,* the reducing clause in Niemann's policy violated sec. 632.32(4)(a), Stats., because it reduced the amount of coverage below the minimum coverage mandated by the statute. Here, after Ford's $25,000 is subtracted from Rural's coverage, that coverage is still $25,000, the minimum amount of uninsured motorist coverage mandated by the statute. Also, *Niemann* is grounded on the theory that the purpose of uninsured motorist coverage is to compensate an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured. Here, the Fritsches will be compensated in exactly the same amount whether Rural pays $25,000 or $50,000. Finally,

secs. 632.32(4)(a) and 631.43, Stats., apply to insurance policies and the relationship between policies. As we have noted, Ford's liability does not arise as the result of an insurance policy. Decisions such as *Niemann, Nicholson* and *Welch,* which base their holding on statutes regulating insurance policies, are not applicable when a reducing clause reduces coverage for amounts received from sources other than an insurance policy.[3]

## IOWA'S CROSS-APPEAL

### *Ford's Payment*

Iowa asserts that the $25,000 paid to the Fritsches by Ford should be deducted from its obligation. The result would be that with Ford's $25,000 and Rural's $25,000 ahead of its obligation, Iowa would be liable only for the difference between $50,000 and Iowa National's policy limit of $100,000.[4] Iowa reasons that had Iowa

---

[3]An example of this type of reduction would be a payment made directly from the tortfeasor to the injured party. Rural's policy permits Rural to deduct such a payment from its uninsured motorist coverage. This is consistent with subrogation principles. An uninsured motorist carrier may recover from the tortfeasor payments made to its insured under its uninsured motorist coverage. There is no difference between this procedure and reducing uninsured motorist coverage by amounts the tortfeasor pays the injured person. Should we accept Iowa's argument that any payment made to an injured person regardless of source should be governed by a statute pertaining to insurance payments, we not only would be legislating, but we would also be holding that subrogation was voided by sec. 632.32(4)(a), Stats. Only uninsured motorists would benefit from such a holding.

[4]The amounts have been restated to reflect our holding in the previous section that Rural's liability is limited to $25,000 by the second reducing clause. Based on the trial court's order, Iowa argued in its brief that with Ford's $25,000 and Rural's $50,000

National not been insolvent, the maximum amount the Fritsches could have recovered would have been $100,000, because neither Ford nor Rural would have been liable. In that event, the Fritsches could have pursued the McMullen estate for $23,922, the amount by which the verdict plus costs exceeded $100,000. Iowa cites decisions, such as *Vokey v. Massachusetts Insurers Insolvency Fund,* 409 N.E.2d 783 (Mass. 1980), to the effect that a guaranty association is to be a source of last resort in the event of an insurer's insolvency.

The dispute between Iowa and the Fritsches centers on IOWA CODE ANN. § 515B.9. (West 1988 and Supp. 1992), entitled "**Nonduplication of recovery.**"[5] The statute reads in pertinent part:

> 1. Any person having a claim under another policy, which claim arises out of the same facts which give rise to a covered claim, is first required to exhaust the person's right under the policy. Any amount recovered or recoverable by a person under another insurance policy shall be credited against the liability of the association under [other parts of the Iowa Guaranty Association law]. For purposes of this section, another insurance policy means a policy issued by any insurance company, whether a member insurer or not . . ..

Ford's liability is by reason of sec. 344.52, Stats., not by reason of an insurance policy. The Fritsches argue that the Iowa statute is clear on its face, and that we are

---

ahead of its obligation, it should be liable only for the difference between $75,000 and Iowa National's policy limit of $100,000. Because we limited Rural's liability to $25,000, Iowa is now arguing that its maximum liability should be lowered from $75,000 to $50,000, rather than from $50,000 to $25,000.

[5]All citations to IOWA CODE ANNOTATED contained herein are to West 1988 and Supp. 1992.

prohibited from looking beyond the language of the statute to ascertain its meaning. *See Voss v. City of Middleton,* 162 Wis. 2d 737, 749, 470 N.W.2d 625, 629 (1991).

Iowa contends that the purpose of a guaranty association is to prohibit duplication of recovery, and to avoid placing a claimant in a better position than if the involved insurance carriers were solvent. *Lucas v. Illinois Ins. Guar. Fund,* 367 N.E.2d 469, 471 (Ill. App. Ct. 1977). Ignoring Ford's liability is therefore contrary to the legislative intent of the Iowa Insurance Guaranty Association Act. Wisconsin's alternative plain meaning rule, that the spirit or intention of a statute should govern over the literal or technical meaning, supports this position. *See City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 236, 332 N.W.2d 782, 787 (1983).

Though Wisconsin's plain meaning rules may lead to the same result, *Mullen v. Coolong,* 132 Wis. 2d 440, 448, 393 N.W.2d 110, 113 (Ct. App. 1986), *overruled on other grounds, Nicholson v. Home Ins. Cos.,* 137 Wis. 2d 581, 405 N.W.2d 327 (1987), that is not true here. The plain meaning of the Iowa statute requires that Ford's payment be ignored because the payment was not the result of Ford owning an insurance policy. But placing the Fritsches in a better position because of Iowa National's insolvency is contrary to the spirit of the Iowa statute.

If decisions of the supreme court are inconsistent, we follow that court's practice of relying on the more recent decision. *Betthauser v. Medical Protective Co.,* 164 Wis. 2d 343, 350, 474 N.W.2d 783, 786 (Ct. App. 1991). *Voss* is the most recent supreme court pronouncement of the plain meaning rule. We therefore conclude that because IOWA CODE ANN. § 515B.9.1. plainly and on·

its face limits nonduplication as a result of insurance policies, we may not go beyond that meaning.

### Ford's Payment as "Covered Claim"

Iowa is obligated "to the extent of the covered claims existing prior to the determination of insolvency and arising within thirty days after the determination of insolvency . . .." IOWA CODE ANN. § 515B.5.1.a. A "covered claim" is defined as an "unpaid claim . . . which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this chapter applies . . .." IOWA CODE ANN. § 515B.2.3.a.

Iowa argues that the $25,000 statutory obligation of Ford is not an unpaid claim. It, therefore, is not a covered claim and should decrease Iowa's obligation. It cites *Besack v. Rouselle Corp.,* 706 F. Supp. 385 (E.D. Pa. 1989), *Ferrari v. Toto,* 402 N.E.2d 107 (Mass. App. Ct. 1980), and *Florida Ins. Guar. Ass'n v. Dolan,* 355 So. 2d 141 (Fla. Dist. Ct. App. 1978), in support of its assertion. *Besack* and *Ferrari* determined that worker's compensation benefits were not "covered claims" because they were not "unpaid claims." In *Dolan,* the injured party had agreed with the insured to accept payment from the insured.

■■■

We conclude that *Besack* and *Ferrari* are more appropriately analyzed under IOWA CODE ANN. § 515B.9.1., which provides: "Any person having a claim under another policy, which claim arises out of the same facts which give rise to a covered claim, is first required to exhaust the person's right under the policy." Worker's compensation benefits are payments from other insurance policies, and therefore would have to be exhausted before a guaranty association would be liable. In *Dolan,*

the insured had agreed with the injured plaintiff to pay a $70,000 judgment entered in federal court. The agreement was secured by a cashier's check under an escrow agreement. The plaintiff then sued his state's guaranty association in state court to recover the same $70,000. The court concluded that because the plaintiff had been paid, he could not recover. Here, the Fritsches have not been paid the full amount of their judgment once, let alone twice. *Dolan* does not control under the facts of this case. We therefore affirm the trial court's decision that Iowa is not entitled to credit Ford's payment against its liability.

## FRITSCHES' CROSS-APPEAL

The Fritsches cross-appeal from the trial court's post-trial order denying their motion to assess twelve percent interest against Rural for its failure to promptly pay their uninsured motorist claim. Their motion was based on sec. 628.46, Stats., which requires insurers to pay claims within thirty days of evidence of loss unless the insurer has reasonable proof to establish that it is not responsible for the payment.[6] They argue that the

---

[6]Section 628.46, Stats., provides:

(1) Unless otherwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after written notice is furnished to the insurer. Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer.

plain language of sec. 628.46 required Rural to pay its policy limits to them upon their demand, or pay twelve percent interest until the time they did so.

We have held that sec. 636.10, Stats., the predecessor to sec. 628.46, Stats., was an all-inclusive statute requiring all insurance companies to promptly pay all claims. *Wisconsin Physicians Serv. Ins. Corp. v. Mitchell,* 114 Wis. 2d 338, 344, 338 N.W.2d 326, 330 (Ct. App. 1983). We therefore address the arguments Rural makes to determine whether sec. 628.46 applies to claims by a policy owner against his or her uninsured motorist carrier.

### *Uninsured Motorist Claim Not "Insurance Claim"*

Rural asserts that until the jury reached its verdict, the Fritsches were not entitled to payment under Rural's uninsured motorist coverage. It cites the portion of its policy which provides: "Determination whether an **insured person** is legally entitled to recover damages or the amount of damages shall be made by agreement between the **insured person** and us. If no agreement is

---

For the purpose of calculating the extent to which any claim is overdue, payment shall be treated as being made on the date a draft or other valid instrument which is equivalent to payment was placed in the U.S. mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery. All overdue payments shall bear simple interest at the rate of 12% per year.

(2) Notwithstanding sub. (1), the payment of a claim shall not be overdue until 30 days after the insurer receives the proof of loss required under the policy or equivalent evidence of such loss. The payment of a claim shall not be overdue during any period in which the insurer is unable to pay such claim because there is no recipient who is legally able to give a valid release for such payment, or in which the insurer is unable to determine who is entitled to receive such payment, if the insurer has promptly notified the claimant of such inability and has offered in good faith to promptly pay said claim upon determination of who is entitled to receive such payment.

reached, the decision will be made by arbitration." Rural concludes that because the parties failed to agree and the trial court denied Rural's motion to arbitrate the matter, the only way damages could be determined was by trial.

But sec. 628.46, Stats., makes no distinction between payment of claims based on judgment and all other claims. We recognized that in *Mitchell.* 114 Wis. 2d at 344, 338 N.W.2d at 330. Indeed, were we to conclude that only claims reduced to judgment or those which were the subject of an arbitration award were within the reach of sec. 628.46, we would effectively repeal the statute. A claim is statutorily deemed overdue if not paid within thirty days after a proof of loss or equivalent evidence of the loss. Section 628.46(2), Stats. That time can be far in advance of a judgment or award.

There is another reason why sec. 628.46, Stats., applies to the Fritsches' claim. Wisconsin courts have recognized that prejudgment interest reflects the value of the use of money. *Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Ins. Co.,* 152 Wis. 2d 7, 13, 447 N.W.2d 367, 369 (Ct. App. 1989). Rural has had the use of the $25,000 uninsured motorist recovery from the time it had evidence of the Fritsches' loss. It is consistent with the "promptly pay" requirement of the statute to require Rural to pay interest from that date.

*Proof of Non-responsibility*

Rural asserts that because it had reasonable proof to establish its non-responsibility for sec. 628.46, Stats., interest, its payment was not overdue and the Fritsches are not entitled to sec. 628.46 interest. The trial court did not make a finding in that regard because the court

determined that sec. 628.46 was inapplicable. As we conclude later in this opinion, that statute is applicable to uninsured motorist claims.

The Wisconsin Constitution precludes this court from making factual determinations. *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107 n.3, 293 N.W.2d 155, 159 n.3 (1980). We therefore remand to permit the trial court to determine whether Rural had reasonable proof to establish non-responsibility for payment. The court may take evidence if necessary.[7]

### *Unliquidated or Unliquidable Claim*

Rural argues that because the Fritsches' claim is grounded in tort, and involves nebulous damages such as pain and suffering and future loss of earning capacity, it is not possible to value the claim, and therefore sec. 628.46, Stats., should not apply to this type of claim. Rural notes that none of the reported cases interpreting sec. 628.46 involve damages of the sort encountered in uninsured motorist claims. *See Upthegrove Hardware,* 152 Wis. 2d at 7, 447 N.W.2d at 367 (fire loss); *Mitchell,* 114 Wis. 2d at 338, 338 N.W.2d at 326 (health insurance); *Poling v. Wisconsin Physicians Serv.,* 120 Wis. 2d 603, 357 N.W.2d 293 (Ct. App. 1984) (health insurance).

---

[7]It may appear inconsistent to consider Rural's defense for nonpayment when this court has, after the fact, determined that Rural *is* responsible for $25,000 of uninsured motorist coverage. But Rural was not required to predict the outcome of this case at its peril. Section 628.46, Stats., placed the burden on Rural to obtain proof of non-responsibility. Lack of knowledge is not proof. If Rural is able to show that it had proof of non-responsibility, interest would not accrue. We save until another day the question of what evidence is sufficient to constitute "proof" of non-responsibility.

Rural also asserts that *Johnson v. Pearson Agri-Systems, Inc.*, 119 Wis. 2d 766, 350 N.W.2d 127 (1984), holds that preverdict interest is recoverable only on liquidated or liquidable damages.

Rural is correct that neither sec. 628.46, Stats., nor its predecessor, sec. 636.10, Stats., has been applied to uninsured motorist claims. But sec. 636.10 was not enacted until 1975, and Rural has cited the only three relevant cases dealing with that statute and sec. 628.46, *Upthegrove Hardware, Mitchell* and *Poling.* The existence of those three cases does not mean that the legislature intended that the statute would not apply to uninsured motorist coverage. And *Johnson* examined the right to preverdict interest under the common law. 119 Wis. 2d at 770-72, 350 N.W.2d at 130-31. The issue in this case is the application of a statute.

We agree that uninsured motorist claims, which often involve nebulous damages, are difficult to evaluate.[8] It may be that the risk of mis-evaluation outweighs the risk of paying sec. 628.46, Stats., interest. But Rural has had the use of $25,000 which became owing to the Fritsches as a result of an accident which occurred October 11, 1985. Presumably, Rural has received a return on that amount since then. We see nothing illogical in interpreting a broad statute to require Rural to pay for the use of $25,000 from the date by which it had received evidence of the loss equivalent to a proof of loss.

Because the trial court concluded that sec. 628.46, Stats., was inapplicable to this case, it did not determine a date after which Rural was required to pay sec. 628.46

---

[8]Rural cites letters from attorneys which show this to be true. The Fritsches' attorney claimed that their damages would vastly exceed $125,000. Rural had hoped to keep damages below $50,000. The jury found damages of about $120,000.

interest. We therefore remand to permit the trial court to determine that date, taking evidence if necessary.[9]

*By the Court.*—Judgment and orders affirmed in part; reversed in part and cause remanded.

[9]This question is intertwined with the issue in the previous section—whether Rural had a defense to the Fritsches' claim.