Debra L. KONTOWICZ, Keith A. Kontowicz, Scott Kontowicz, and Katie Kontowicz, by their Guardian ad Litem, William Cannon, Plaintiffs-Respondents-Petitioners,

AMERICAN FAMILY MUTUAL INSURANCE CO., Involuntary-Plaintiff,

v.

AMERICAN STANDARD INSURANCE Co. of Wisconsin,† Defendant-Appellant,

ABC INSURANCE Co., Defendant.

Larry BUYATT, Plaintiff-Respondent-Petitioner,

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Involuntary-Plaintiff,

v.

METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY and Jason E. Schoessow, Defendants-Appellants.

Supreme Court

*Nos. 2003AP2177 & 2003AP2534. Oral argument November 15, 2005.—Decided May 18, 2006.*

† Motion for reconsideration denied 7-7-06; opinion modified. *See* 2006 WI 90.

2006 WI 48

(Also reported in 714 N.W.2d 105.)

304

For the plaintiffs-respondents-petitioners there were briefs by *William M. Cannon, Edward E. Robinson,* and *Cannon & Dunphy, S.C.,* Brookfield, and oral argument by *Edward E. Robinson.*

For the defendants-appellants Metropolitan Property and Casualty Insurance Company and Jason E. Schoessow, there was a brief by *Donald H. Piper, Patrick A. O'Neil,* and *Piper & Schmidt,* Milwaukee, and oral argument by *Donald H. Piper.*

For the defendant-appellant American Standard Insurance Co. of Wisconsin, there was a brief by *James C. Ratzel* and *Ratzel & Associates, LLC,* Brookfield; and *Colleen D. Ball* and *Appellate Counsel, S.C.,* Wauwatosa, and oral argument by *James C. Ratzel.*

An amicus curiae brief was filed by *Todd G. Smith* and *LaFollette, Godfrey & Kahn,* Madison, on behalf of Civil Trial Counsel of Wisconsin and the Wisconsin Insurance Alliance.

An amicus curiae brief was filed by *Keith R. Clifford, Teague D. Devitt,* and *Clifford & Raihala, S.C.,* Madison, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. N. PATRICK CROOKS, J. Debra Kontowicz (Kontowicz) and Larry Buyatt (Buyatt) appeal a published decision of the court of appeals reversing the decisions of two different branches of the Waukesha County Circuit Court. The cases were consolidated on appeal. In each case, the circuit court awarded the plaintiffs/petitioners interest under Wis. Stat. § 628.46 (2001–02).[1] The issue before this court is whether § 628.46, which imposes a 12 percent simple interest rate for overdue payment of an insurance claim, applies to the insurance company of a negligent tortfeasor and, thus, allows the recovery of interest by a third-party claimant, such as the plaintiffs/petitioners here, injured by such tortfeasor.

¶ 2. We reverse the decision of the court of appeals. We conclude that when there is clear liability, a sum certain owed, and written notice of both, the plain language of Wis. Stat. § 628.46, incorporating by reference Wis. Stat. § 646.31(2), imposes 12 percent simple interest on overdue payments to third-party claimants in such personal injury claims and actions. However, we limit our holding to only those situations in which three conditions to trigger the interest are met. First, there can be no question of liability on the part of the insured. Second, the amount of damages must be in a sum certain amount. Third, the claimant must provide written notice of both liability and the sum certain amount owed. We further hold that claims concerning the issue

---

[1] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

307

of interest due under § 628.46 may be bifurcated under Wis. Stat. § 805.05(2), and that in the case of Buyatt, the award of interest should be in accord with Wis. Stat. § 807.01(4), rather than § 628.46.

I

DEBRA KONTOWICZ

¶ 3. On August 30, 2000, Debra Kontowicz's spinal cord was severed and she was rendered a quadriplegic as a result of an automobile accident. Kontowicz's van was struck from behind by a vehicle operated by Daniel Jeffers (Jeffers), a 16–year-old insured by American Standard Insurance Co. of Wisconsin (American Standard). Based on the skid marks left by his car, police concluded that Jeffers had been traveling between 88 and 90 miles per hour (m.p.h.) in a 35 m.p.h. zone. Kontowicz's vehicle went off the road, striking a utility pole. She was taken to the hospital by Flight for Life. At the time of the accident, Jeffers' policy with American Standard included a $500,000 per person liability limit.

¶ 4. By September 7, 2000, American Standard was aware of Kontowicz's quadriplegic injuries, and Jeffers' almost certain liability. The head of American Standard's legal department met with the claims adjuster assigned to the Kontowicz claim on that date, and decided that "[o]nce the paraplegic injuries are confirmed, we should post the $500,000 limits with what appears at this time to be clear liability on the part of Dan Jeffers."

¶ 5. Kontowicz and her family filed suit against American Standard and Jeffers on November 8, 2000. On December 28, 2000, both American Standard and Jeffers filed separate answers to Petitioners' complaint.

In his answer, Jeffers admitted that he was negligent with respect to the operation of his motor vehicle. One week later, on January 5, 2001, the Kontowiczs' attorney wrote counsel for American Standard, enclosing a copy of the hospital discharge summary documenting Kontowicz's severed spinal cord and quadriplegia, and an itemization of her related medical bills, along with copies of the actual billing statements, in the amount of $238,379.53.

¶ 6. American Standard did not agree to tender its limits until June 1, 2001. Its offer to the Kontowiczs was conditioned upon "a full release of all defendants," even though American Standard was not required to secure a full release of its insureds as a condition of paying limits.[2]

¶ 7. On July 30, 2001, the attorney for the Kontowiczs wrote American Standard demanding the payment of policy limits, together with Wis. Stat. § 628.46 interest. American Standard responded on October 18, 2001, reiterating its position that it would pay policy limits only in return for a release of American Standard and its insureds.

¶ 8. American Standard agreed to pay its policy limits in return for only a partial release of its insureds on February 2, 2002. Three weeks later, on February 19, 2002, the Kontowiczs reached a settlement with Jeffers, whereby Jeffers agreed to pay $78,000 over and above the $500,000 liability limit.

¶ 9. On February 20, 2002, American Standard sent a check to the Kontowiczs for $500,000. The Kontowiczs reserved their right to bring a claim against

---

[2] American Standard's policy, however, contained a pay-and-walk provision, which provided that "WE WILL NOT DEFEND ANY SUIT AFTER OUR LIMIT OF LIABILITY HAS BEEN OFFERED OR PAID."

American Standard for interest pursuant to Wis. Stat. § 628.46.

¶ 10. Following a motion hearing, Waukesha County Circuit Court Judge Donald P. Hassin made an oral ruling awarding the Kontowiczs interest pursuant to Wis. Stat. § 628.46. The circuit court ruled that a claim was made against American Standard for at least $238,000 when, on January 5, 2001, the Kontowiczs sent the company a copy of the hospital discharge summary and itemized medical bills. In addition, the circuit court ruled that American Standard was presented with a claim for the full $500,000 policy limit on July 30, 2001, when the Kontowiczs' counsel demanded payment of the limits. An order was entered on January 2, 2003, awarding the Kontowiczs $49,643.15 in statutory interest.[3] American Standard appealed.

## LARRY BUYATT

¶ 11. On June 21, 1999, Larry Buyatt was injured in a motor vehicle collision caused by the negligence of Jason Schoessow (Schoessow). Schoessow was driving west on Highway 59 at approximately 45 m.p.h. when he failed to stop at a red light, striking Buyatt's truck on its front right fender as it traveled north through the intersection. At the time of the accident, Schoessow was covered by a Metropolitan Property and Casualty Insurance Co. (Metropolitan) liability insurance policy.

---

[3] Interest owed was calculated as follows: Twelve percent simple interest on $238,379.53 from January 8, 2001, to July 30, 2001, in the amount of $15,920.65 ($238,379.53 x .000329 percent per day x 203 days); plus twelve percent simple interest from July 30, 2001, to February 20, 2002, in the amount of $33,722.50 ($500,000 x .000329 percent per day x 205 days).

¶ 12. On January 29, 2001, Buyatt sent Metropolitan a letter and documentation detailing the collision and his resulting injuries. Buyatt's medical bills and lost wages, at the time, totaled $6,361. In this letter, Buyatt offered to settle his claim for $35,000.

¶ 13. In response, Metropolitan admitted that at least a portion of Buyatt's medical bills were reasonable and necessary for treatment as a result of injuries he suffered in the collision. However, Metropolitan offered only $6,400 to settle fully Buyatt's claim. Buyatt filed suit against Metropolitan and Schoessow for damages arising from his accident, as well as Wis. Stat. § 628.46 interest.

¶ 14. On June 8, 2001, Metropolitan admitted that Schoessow's negligence was the sole cause of the injuries Buyatt suffered in the collision. However, Metropolitan refused to tender any amount in partial payment of Buyatt's claim, and conditioned any payment upon acceptance of a full settlement.[4]

¶ 15. Buyatt filed an offer of settlement, on April 16, 2003, for $21,000 pursuant to Wis. Stat. § 807.01(3). On May 14, 2003, a jury awarded Buyatt $24,081 in damages, including past medical expenses, past wage loss, and past and future pain, suffering, and disability.

---

[4] Buyatt had suffered somewhat similar injuries in an automobile accident that occurred five years prior to the accident at issue. Metropolitan had information that Buyatt failed to follow through on medical treatment recommendations and medical reports that Buyatt had complained, before the accident occurred, of pain in the area of the body where he claimed he was injured in the accident with Schoessow. In addition, Metropolitan had information that Buyatt suffered somewhat similar injuries subsequent to the accident involving Schoessow.

¶ 16. Buyatt then moved the circuit court for interest under Wis. Stat. § 628.46, and the court granted Buyatt's motion. Waukesha County Circuit Court Judge Lee S. Dreyfus, Jr. found that Metropolitan had written notice of Buyatt's claim on June 8, 2001, that Schoessow was causally negligent for the injuries Buyatt suffered as a result of the collision, and that Buyatt was not contributorily negligent. The court further determined that, based on the information in its possession and its own admissions, as of June 8, 2001, Metropolitan knew or reasonably should have known that it was responsible for at least a portion of Buyatt's claims. Because the circuit court found that § 628.46 applies to third-party insurance claims, it granted Buyatt's motion for § 628.46 interest.[5] Metropolitan appealed the portion of the judgment imposing § 628.46 interest.

---

[5] The transcript of the hearing before the circuit court on July 22, 2003, shows that Judge Dreyfus calculated Wis. Stat. § 628.46 interest owed Buyatt as follows. On or about May 9, 2001, Buyatt served on Metropolitan Requests for Admission. Because Metropolitan did not respond to those Requests for Admission, they were deemed admitted 30 days later. Therefore, on June 8, 2001, Metropolitan had effectively admitted that Schoessow was liable for the accident and that Buyatt was not contributorily negligent. By that date, Metropolitan also had written notice of the amount of Buyatt's medical specials and lost wages. Section 628.46 interest begins accruing 30 days after the statutory requirements are met, therefore on July 8, 2001, 12 percent simple interest began accruing. Judge Dreyfus determined, therefore, that interest accrued during the 647 days between July 8, 2001 and April 16, 2003—the date of Buyatt's final offer of settlement. Judge Dreyfus calculated the interest owed based upon the $24,081 jury verdict for Buyatt, which resulted in a § 628.46 award of $5,169.53. The court did not grant interest under Wis. Stat. § 807.01(4), but did grant double costs in accord with § 807.01(3).

COURT OF APPEALS

¶ 17. The court of appeals consolidated the cases. Concluding that there were "two incompatible, yet reasonable, interpretations" of the statute, the court determined that Wis. Stat. § 628.46 was ambiguous, and therefore went on to explore extrinsic sources in order to discern legislative intent. *Kontowicz v. Am. Standard Ins. Co.*, 2005 WI App 22, ¶ 10, 278 Wis. 2d 664, 693 N.W.2d 112 (citation omitted). The court of appeals concluded that the legislature did not intend that the interest penalty should apply to third-party bodily injury claims and reversed both circuit court decisions. *Id.*, ¶ 24. Kontowicz and Buyatt appealed, and this court granted their petition for review on April 6, 2005.

## II

¶ 18. Statutory interpretation is an issue of law which we review independently of lower court decisions. While our review is de novo, this court benefits from the analyses of the circuit court and the court of appeals. *State v. Anderson*, 2005 WI 54, ¶ 23, 280 Wis. 2d 104, 695 N.W.2d 731 (citing *State v. Waushara County Bd. of Adjustment*, 2004 WI 56, ¶ 14, 271 Wis. 2d 547, 679 N.W.2d 514).

## III

¶ 19. American Standard and Metropolitan (Respondents) make three arguments in support of their position that Wis. Stat. § 628.46 does not apply to third-party liability claims. First, Respondents argue that the plain language and context of the statute make

it clear that § 628.46 only applies to first-party claims. For additional support, they look to precedent examining the statute and legislative history. Second, Respondents argue that the 1999 amendments to Wis. Stat. § 646.31 were intended to eliminate third-party property damage and bodily injury claims from that statute, and by reference, from § 628.46. Third, Respondents urge that it is bad policy to apply the statute to third-party claims. If this court rejects the position that § 628.46 interest does not apply to third-party bodily injury claims, Respondents suggest that such interest should not be imposed based upon the particular facts of these cases. We will examine each argument in turn.

¶ 20. We first examine the applicability of Wis. Stat. § 628.46 to third-party claims. Kontowicz and Buyatt (Petitioners) maintain the statute is unambiguous, the language plainly requiring insurers to "promptly pay every insurance claim." Wis. Stat. § 628.46(1). Further, § 628.46(3)[6] clearly states, they argue, that the statute applies to classes of claims enumerated in Wis. Stat. § 646.31(2), which includes third-party claimants who are residents of the state. Petitioners emphasize the language in § 646.31(2)(d).[7]

¶ 21. American Standard and Metropolitan argue that the court of appeals correctly determined that Wis. Stat. § 628.46 is ambiguous. The ambiguity, Respondents suggest, arises from the fact that the statute was intended to apply only to first-party claims, yet incorporates by reference Wis. Stat. § 646.31(2) which seems

---

[6] Wisconsin Stat. § 628.46(3) states: "This section applies only to the classes of claims enumerated in s. 646.31(2)."

[7] Wisconsin Stat. § 646.31(2)(d) provides: "*Third party claimants* . A claim under a liability or workers' compensation insurance policy, if either the insured or the 3rd party claimant was a resident of this state at the time of the insured event."

to include third-party liability claims. Respondents maintain that because of the ambiguity, it was appropriate for the court of appeals to look to extrinsic sources, and in doing so, the court of appeals correctly resolved the ambiguity.

¶ 22. When interpreting a statute, we first look to its plain meaning. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). "Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.,* ¶ 46 (citations omitted).

¶ 23. Wisconsin Stat. § 628.46 Timely payment of claims states, in relevant part:

(1)*Unless otherwise provided by law, an insurer shall promptly pay every insurance claim.* A claim shall be overdue if not paid *within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss.* If such written notice is not furnished to the insurer as to the entire claim, *any partial amount supported by written notice* is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after written notice is furnished to the insurer. *Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice* has been furnished to the insurer. For the purpose of calculating the extent to which any claim is overdue, payment shall be treated as being made on the date a draft or other valid instrument which is equiva-

lent to payment was placed in the U.S. mail in a properly addressed, postpaid envelope, or, if not so posted, on the date of delivery. *All overdue payments shall bear simple interest at the rate of 12% per year.*

(2) Notwithstanding sub. (1), the payment of a claim shall not be overdue until 30 days after the insurer receives the *proof of loss required under the policy or equivalent evidence of such loss. . . .*

. . . .

(3) *This section applies only to the classes of claims enumerated in s. 646.31(2).*

Wis. Stat. § 628.46 (emphasis added).

¶ 24. Wisconsin Stat. § 646.31 Eligible claims states, in relevant part:

(2) Classes of claims to be paid. No claim may be paid under this chapter unless the claim is in one of the following classes:

. . . .

(d) *Third-party claimants . A claim under a liability* or workers' compensation insurance *policy, if either the insured or the 3rd party claimant was a resident of this state at the time of the insured event.*

Wis. Stat. § 646.31(2)(emphasis added).

¶ 25. Wisconsin Stat. § 628.46 begins "[u]nless otherwise provided by law, an insurer shall promptly pay every insurance claim." Wis. Stat. § 628.46(1). American Standard and Metropolitan maintain that although that first sentence seems broad and encompassing, the statutory language that follows that statement clearly indicates that the "timely payment of claims" statute was meant to apply exclusively to first-party claims. Respondents explain that a typical "insur-

316

ance claim" occurs when an insured suffers personal injury or property damage, and the insured submits "proof of loss" to the insurer. In contrast, Respondents argue that a third-party lawsuit for personal injury damages filed against an insurance company is not an "insurance claim." It is a negligence claim against a defendant who happens to have insurance. In addition, Respondents focus on the phrase "under the policy" in subsection (2) suggesting that the terminology has a distinctly first-party focus. By way of example, they cite Wis. Stat. § 645.68 which distinguishes between claims "under policies" and claims "against the insurer that are not under policies and that are for liability for bodily injury. . . ." Wis. Stat. §§ 645.68(3) and (3m). Further, Respondents argue that the phrases "claim . . . under the policy," "proof of loss," and "covered loss" relate historically to first-party claims, with the language of the statute coming from the standard fire insurance policy annexed to Wis. Stat. § 203.01(1) (1973–74).

¶ 26. Respondents further reason that the inclusion of "third-party claimants" via Wis. Stat. § 646.31(2)(d) applies only to third-party claimants standing in the shoes of first-party claimants (third-parties making first-party claims). For example, if an insurance contract provides coverage for passengers of the insured, the passenger would be a third-party in that he or she is a "stranger" to the insurance contract as they are not an insured and not a party to the insurance contract, yet that third-party could still bring a first-party claim as a provision of the contract. The court of appeals agreed with Respondent insurers that Wis. Stat. § 628.46 was intended to apply to first-party claims and distinguished first-party claims "under the policy" from claims by third-parties "against the policy." We find these arguments strained and, ultimately, unconvincing.

317

¶ 27. Petitioners maintain, and we agree, that Wis. Stat. § 628.46 unambiguously includes third-party claimants. The broad language of the phrase "an insurer shall promptly pay every insurance claim" means just that—every insurance claim. The statute is not limited in its application only to "first-party" claims by "insureds." A claim must be paid within 30 days of an insurer receiving written notice of "the *fact of* a covered loss and the amount of the loss." Wis. Stat. § 628.46(1) (emphasis added). Furthermore, Respondents' reliance on the phrase "proof of loss" in subsection (2) to prove that the statute applies only to first-party claims is unsupportable. Even if "proof of loss" is typically used in a first-party context, the statute requires either "proof of loss required under the policy *or equivalent evidence of such loss.*" Wis. Stat. § 628.46(2)(emphasis added).

¶ 28. In fact, the only limitation in the statute occurs in subsection (3), which confines the statute's applicability "only" to those classes of claims enumerated in Wis. Stat. § 646.31(2). Wis. Stat. § 628.46(3). As noted previously, § 646.31(2)(d), eligible claims includes third-party claimants making "[a] claim under a liability . . . insurance policy, if either the insured or the 3rd party claimant was a resident of this state at the time of the insured event." Wis. Stat. § 646.31(2)(d).

¶ 29. Because we have already determined that the plain language of Wis. Stat. § 628.46 is not ambiguous, we would normally not look to extrinsic sources. *Kalal,* 271 Wis. 2d 633, ¶ 51. However, since the court of appeals relied heavily on extrinsic sources for its analysis, it is appropriate to review the court of appeals' analysis, including relevant case law.

¶ 30. Our case law has consistently construed Wis. Stat. § 628.46 as applying to all insurers and all

claims that fall within Wis. Stat. § 646.31(2). In *Wisconsin Physicians Service Insurance Corp. v. Mitchell,* the court of appeals considered whether § 628.46 applied to service insurance corporations.[8] *Wisconsin Physicians Serv. Ins. Corp. v. Mitchell,* 114 Wis. 2d 338, 338 N.W.2d 326 (Ct. App. 1983). In holding that it did apply, the court acknowledged that:

> [the] phrases "covered loss," "amount of the loss" and "proof of loss" are usually identified with indemnity-type insurance companies, not service insurance corporations because service insurance corporations do not receive any notice or proof of loss from insureds, but rather pay the health care providers directly for services rendered to insureds.[9]

*Id.* at 343. Despite this fact, the court of appeals was swayed by the plain, broad language of the statute. "In light of the all-inclusive first sentence requiring all insurance companies to pay all claims, we conclude that the legislature intended to apply the thirty-day requirement to service insurance corporations." *Id.* at 344. Critically, the court noted "[i]f the legislature had intended to grant an additional exemption to service insurance corporations, it would have done so." *Id.* at 344–45. "[S]ince no exemption [was] contained in the statute's language," the court of appeals held that § 628.46 applies to service insurance corporations. *Id.* at 345.

---

[8] *Wisconsin Physicians Service Insurance Corp. v. Mitchell,* 114 Wis. 2d 338, 338 N.W.2d 326 (Ct. App. 1983) considered the scope of Wis. Stat. § 636.10 (1979–80), the predecessor to Wis. Stat. § 628.46 (2001–02). The statute was renumbered and relocated in 1981. 1981 Wis. Act 38, §§ 22, 24.

[9] Respondents suggest that because Wis. Stat. § 628.46 was found to be ambiguous by the court of appeals in *Mitchell,* we must also do so. We disagree, for the reasons set forth herein.

¶ 31. Moreover, in *Poling v. Wisconsin Physicians Service,* the court of appeals again held that Wis. Stat. § 628.46 applied to a group health insurer. *Poling v. Wisconsin Physicians Serv.,* 120 Wis. 2d 603, 612–13, 357 N.W.2d 293 (Ct. App. 1984). Awarding prejudgment interest on plaintiffs' breach of contract award, the court explained that § 628.46 is "an additional provision of the insurance contract incorporated into it by operation of law." *Id.* at 612 (citation omitted). There was no statutory provision that allowed an insurance company to delay payment of a claim. *Id.* at 613. "The only escape clause for avoidance of this interest assessment is when the insurer has reasonable proof that it is not responsible for the payment." *Id.*

¶ 32. Lending further support to a broad, inclusive reading is the Seventh Circuit's analysis in *Allison v. Ticor Title Insurance Co.* The federal appellate court construed the interplay of Wis. Stat. § 628.46 with Wis. Stat. § 646.31(2) and determined that the classes of claims to be paid under § 628.46 include "residents, certain nonresidents, owners of property interests, third party claimants, and assignees." *Allison v. Ticor Title Ins. Co.,* 979 F.2d 1187, 1202 (7th Cir. 1992). Significantly, the Seventh Circuit held that § 628.46 applied to title insurers, even though title insurers are exempt from the Wisconsin Insurance Security Fund (WISF).[10] *See* Wis. Stat. § 646.01(1)(b)2.

¶ 33. Respondent insurance companies argue that these appellate court cases are not controlling, as they all deal with first-party claims under the statute. While we

---

[10] Wisconsin Stat. § 646.31(2), which Wis. Stat. § 628.46 incorporates by reference, lists classes of claims eligible for payment under the Wisconsin Insurance Security Fund (WISF). The WISF was created to protect insureds in the event of the insolvency of their insurance company.

recognize that the cases may be distinguishable on that point, they do reinforce the breadth of the statute's scope, as well as the idea that the statute would similarly apply to third-party claimants.

¶ 34. Further, American Standard and Metropolitan argue that the context, objective, and statutory background of Wis. Stat. § 628.46(2) serve to confirm the statute's first-party focus. In 1981, the legislature moved and renumbered the statute, taking it from the "Claims Adjustment" chapter and inserting it into the "Insurance Marketing" chapter.[11] American Standard and Metropolitan maintain that the provision's current location suggests it was meant to regulate how insurers market their policies to potential customers, but was not meant to regulate litigation between an insurer and a third-party claimant. Therefore, Respondents argue that the statutory context of the section proves it only applies to first-party claimants.

¶ 35. We recognize that a title can be "persuasive evidence of statutory interpretation." *Mireles v. LIRC*, 2000 WI 96, ¶ 60 n.13, 237 Wis. 2d 69, 613 N.W.2d 875. Yet Respondents' argument is, ultimately, unpersuasive. The purposes of the chapter include encouraging improvement of professional competence of insurance intermediaries, providing maximum freedom of marketing methods of insurance, and regulating insurance marketing practices in conformity with the general provisions of the Insurance Code. *See* Wis. Stat. § 628.01. One could certainly question what a provision to dissuade an insurance company from failing to make payment promptly on claims it knows it is responsible for has to do with marketing to potential customers. Timely payment of claims is a statutory requirement

---

[11] 1981 Wis. Act 38 §§ 22, 24.

imposed by the legislature, apparently in response to the real or perceived problem of insurance companies failing to make payment promptly on claims that they were liable to pay. The location of that requirement does not lead to the conclusion that only first-party claims were intended to be covered by the statutory requirements.

¶ 36. The court of appeals' analysis that the legislature did not intend Wis. Stat. § 628.46 to apply to third-party claimants was based largely upon what it deemed the "historical context for development of the interest penalty. . . ." *Kontowicz,* 278 Wis. 2d 664, ¶ 17. Looking to case law of that period, the court of appeals noted a distinct "focus on the fiduciary relationship between insurer and insured, and the goal of protecting the rights of the insured." *Id.* From this general context of the period in which the statute was first enacted, the court of appeals concluded that § 628.46 "arose from the legislature's intent to protect the *insured* from improper claims settlement practices," not to protect third-parties. *Id.* (emphasis added).

¶ 37. The flaw in the court of appeals' analysis is that it likens the timely payment of claims statute to tort claims for bad faith. The cases the court relied on involve bad faith on the part of insurance companies. For example, the court cites *Kranzush v. Badger State Mutual Casualty Co.,* 103 Wis. 2d 56, 73, 307 N.W.2d 256 (1981), for the proposition that an " 'insurer's duty of good faith and fair dealing arises from the insurance contract and runs to the insured' " and not to the third-party claimant. *Kontowicz,* 278 Wis. 2d 664, ¶ 15 (citation omitted). While this may be true, Wis. Stat. § 628.46 "is unrelated to the tort of bad faith and permits the imposition of interest even where bad faith is not present." *Poling,* 120 Wis. 2d at 613 (citation omitted).

¶ 38. We now turn to the second major argument presented by the Respondents, that the 1999 amend-

ments to Wis. Stat. § 646.31 were intended to eliminate third-party property damage and bodily injury claims from the statute.

¶ 39. Wisconsin Stat. § 646.31 lists eligible claims under the WISF. The purpose of the WISF, created by Wis. Stat. ch. 646, is to protect an insured in the event that his or her insurance company becomes insolvent. *Fireman's Fund v. Pitco Frialator*, 145 Wis. 2d 526, 532, 427 N.W.2d 417 (Ct. App. 1988). Section 646.31 is a stand-alone statute, detailing eligible claims under the WISF, and is independent of Wis. Stat. § 628.46. Subsection (2) lists classes of claims to be paid by the fund, including "third party claimants." Wis. Stat. § 646.31(2)(d).

¶ 40. The WISF, in what is substantially its current form, was created by statute in 1979.[12] Included in the classes of claims that were eligible to be paid by the fund were:

> (d) Third party claimants. A claim under a liability or workers' compensation insurance policy, if:
>
> 1. Either the insured or the 3rd party claimant was a resident of this state at the time of the insured event;
>
> 2. The claim is for bodily or other personal injuries suffered in this state or by a person who suffered the injuries while a resident of this state; or
>
> 3. The claim is for damage to property situated in this state at the time the damage occurred.

Wis. Stat. § 646.31(2)(d)(1979–80).

---

[12] Although an Insurance Security Fund existed prior to 1979, the 1979 Act repealed and recreated Wis. Stat. ch. 646 of the statutes, making "major changes in the security fund law. . . ." L. 1979, c. 109, § 14.

¶ 41. In 1999, the legislature amended the section of the statute relating to third-party claimants. 1999 Wis. Act 30. The amendments consolidated the introduction and subsection 1, and repealed subsections (d)2 and (d)3. The amended version of the statute reads: "*Third party claimants.* A claim under a liability or workers' compensation insurance policy, if either the insured or the 3rd party claimant was a resident of this state at the time of the insured event." Wis. Stat. § 646.31(2)(d) (1999–2000).

¶ 42. Respondents maintain, and the court of appeals reasoned, that the 1999 amendments eliminated third-party personal injury claims from the WISF. *Kontowicz,* 278 Wis. 2d 664, ¶ 18. The court reasoned that by removing reference to "bodily injury" and "property damage" from the section on third-party claimants, 1999 Wis. Act 30 removed those types of claims from coverage under Wis. Stat. § 646.31, and by reference Wis. Stat. § 628.46. Agreeing with the court of appeals, American Standard and Metropolitan argue that the 1999 amendments removed bodily injury and property damage claims from the prejudgment interest provisions in § 628.46 and the WISF. We disagree with this argument.

¶ 43. Additionally, we do not agree with Petitioners' position that the amendments were made solely for the purpose of eliminating redundancy in the statute, the amended version maintaining its original scope. By eliminating Wis. Stat. § 646.31(2)(d), it clearly appears that the legislature effected a substantive change in the statute by eliminating claims of non-residents who were injured while in Wisconsin from being paid by the fund.[13] We do, however, agree with Petitioners that the

---

[13] The eliminated portions of the statute included claims "for bodily or other *personal injuries suffered in this state* or by

1999 amendments were not intended to, nor did they have the effect of, eliminating the bodily injury claims of third-party claimants who were residents of Wisconsin at the time of the event at issue from coverage under the WISF.[14]

¶ 44. Moreover, the court of appeals relied on the argument that the 1999 amendments were in response to, or at a minimum informed by, two Dane County Circuit Court decisions which had ruled that Wis. Stat. § 628.46 allowed third-party claimants to collect interest under the statute. *Kontowicz*, 278 Wis. 2d 664, ¶ 21.[15] There is no indication in the legislative history that the legislature was even aware of, much less influenced by, the Dane County Circuit Court cases cited by the court of appeals. The court of appeals inappropriately relied on extremely limited legislative history, in order to support an interpretation contrary to the plain language of the statutes.[16]

a person who suffered the injuries while a resident of this state. . . ." Wis. Stat. § 646.31(2)(d)2 (1979–80)(emphasis added).

[14] The revisor's notes accompanying 1999 Act 30 are silent as to the legislature's motives in revising Wis. Stat. § 646.31(2)(d).

[15] The court of appeals' decision cited *Leister v. General Casualty Insurance Co.,* Dane County Circuit Court Case No. 98–CV-3182 (Memorandum Decision and Order on Motion to Dismiss), and *Coker v. American Family Mutual Insurance Co.,* Dane County Circuit Court Case No. 99–CV-2949 (Decision and Order). *Kontowicz v. Am. Standard Ins. Co.,* 2005 WI App 22, ¶ 21, 278 Wis. 2d 664, 693 N.W.2d 112.

[16] Petitioners note that all five circuit court cases known to have addressed the issue of whether Wis. Stat. § 628.46 applies to third-party liability claims and insurers determined that § 628.46 does apply.

■

¶ 45. We therefore disagree with the court of appeals' interpretation, and Respondents' position, that the 1999 amendments eliminated claims for bodily injury or property damage, narrowing the eligibility of third-party claimants to "third parties whose claims arise under the policy in the same manner and under the same provisions as the named insured. . . ." *Id.,* ¶ 18. As we noted more than 25 years ago, "[t]his court has consistently viewed automobile liability insurance policies as more than indemnity contracts between insurer and insured; there is a strong public policy favoring compensation of injured third parties." *Simonds v. Bouton,* 87 Wis. 2d 302, 307, 274 N.W.2d 666 (1979) (citations omitted). The court of appeals' interpretation is in direct conflict with that strong public policy.

¶ 46. The plain language of the statute is not overcome by Respondents' policy arguments against applying Wis. Stat. § 628.46 interest to third-party claims. Respondents suggest that allowing § 628.46 to be applied to third-party claimants like the Petitioners, so that they are able to receive § 628.46 interest, will undermine the fiduciary relationship between insurer and insured. Such application, Respondents argue, imposes a penalty on an insurer who attempts to fulfill its duty to defend its insured. Moreover, Respondents argue that allowing such interest on third-party claims would have a chilling effect upon settlement negotiations, increase litigation, and is contrary to the adversarial nature of third-party litigation.

■

¶ 47. We disagree with these arguments. The purpose of Wis. Stat. § 628.46 is to discourage insurance companies from creating unnecessary delays in paying

claims owed. This purpose is advanced if the injured party is a third-party claimant just as much as if he or she is the insured. We also note that our case law has reasoned that the purpose of § 628.46 is not to penalize insurers, but to compensate claimants for the value of the use of their money. *Upthegrove v. Lumbermans Ins. Co.*, 152 Wis. 2d 7, 13, 447 N.W.2d 367 (Ct. App. 1989). "Prejudgment interest generally is considered compensation for the time value of money and a means of preventing defendants from prolonging litigation and benefitting (sic) from the delay." *Allison*, 979 F.2d at 1201 (citations omitted). This purpose is furthered by a general application of the statute to ensure timely payments are made to all, not just first-party, claimants.

¶ 48. We hold that Wis. Stat. § 628.46 does apply to third-party liability claims for personal injury. However, we limit our holding to only those situations in which three conditions to trigger interest are met. First, there can be no question of liability on the part of the insured. Second, the amount of damages must be in a sum certain amount. Third, the claimant must provide written notice of both liability and the sum certain amount owed. If the insurer has "reasonable proof" it is not responsible, the statute does not apply. "Reasonable proof" means that amount of information which is sufficient to allow a reasonable insurer to conclude that it may not be responsible for payment of a claim. Our case law has generally equated "reasonable proof" of non-responsibility under § 628.46 with whether the "coverage issue was fairly debatable." *Allstate Ins. Co. v. Konicki*, 186 Wis. 2d 140, 160, 519 N.W.2d 723 (Ct. App. 1994)(citation omitted). If coverage is fairly debatable,

327

"the insurer must be considered to have had the required 'proof' of non-responsibility." *Id.*

¶ 49. Finally, we hold that claims concerning the issue of interest due under Wis. Stat. § 628.46 may be bifurcated pursuant to Wis. Stat. § 805.05(2), when "conducive to expedition or economy," for convenience, or to avoid prejudice. Wis. Stat. § 805.05(2). In *Waters v. Pertzborn*, we held that bifurcation under § 805.02 is limited to claims, not issues. *Waters v. Pertzborn*, 2001 WI 62, ¶ 35, 243 Wis. 2d 703, 627 N.W.2d 497. However, we also noted that the legislative history of the "statute reveal[ed] that the rule barring bifurcation of issues *does not apply to issues regarding insurance coverage.*" *Dahmen v. Am. Family Mut. Ins. Co.,* 2001 WI App 198, ¶ 9, 247 Wis. 2d 541, 635 N.W.2d 1 (citing *Waters,* 243 Wis. 2d 703, ¶¶ 21, 23)(emphasis in original).

## IV

¶ 50. Having concluded that Wis. Stat. § 628.46 does apply to third-party claimants, we address Respondents' position that the imposition of the interest penalty is inappropriate in either of these cases, as the insurance companies had neither proof of loss nor knew the amount of loss. As noted previously, the statute applies to claims not paid within 30 days "after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss." Wis. Stat. § 628.46(1). Once the insurer has had written notice of the "fact of a covered loss" and the "amount of the loss," it must pay within 30 days, unless it has "reasonable proof" that it is not, in fact, responsible for the payment.

¶ 51. Respondents argue that one cannot have the knowledge of liability required to make payment without a judgment or settlement. Nor, they argue, can an insurance company know what it actually owes without a resolution endorsed by a court. We disagree.

328

¶ 52. In *Fritsche v. Ford Motor Credit Co.*, the court of appeals rejected this argument, holding "[a] claim is statutorily deemed overdue if not paid within thirty days after a proof of loss or equivalent evidence of the loss. That time can be far in advance of a judgment or award." *Fritsche v. Ford Motor Credit Co.*, 171 Wis. 2d 280, 305, 491 N.W.2d 119 (Ct. App. 1992)(citation omitted). Even acknowledging the fact that "uninsured motorist claims, which often involve nebulous damages, are difficult to evaluate," the *Fritsche* court still concluded that:

> It may be that the risk of mis-evaluation outweighs the risk of paying sec. 628.46, Stats., interest. But [the insurance company] has had the use of $25,000 which became owing to the Fritsches as a result of an accident which occurred October 11, 1985. Presumably, [the insurance company] has received a return on that amount since then. We see nothing illogical in interpreting a broad statute to require [the insurance company] to pay for the use of $25,000 from the date by which it had received evidence of the loss equivalent to a proof of loss.

*Id.* at 307 (footnote omitted).

DEBRA KONTOWICZ

¶ 53. American Standard argues that Kontowicz fell short of the statutory notice requirements, and therefore, it should not be liable for 12 percent interest on her claims. We conclude that Kontowicz met all the statutory requirements necessary to trigger Wis. Stat. § 628.46 interest as of January 5, 2001. On that date Kontowicz sent written notice of the amount of her medical expenses through November 2, 2000, totaling $238,379.53, along with her October 27, 2000 discharge

summary showing her spinal cord had been severed, and the resulting quadriplegia. There was no question of the liability of American Standard's insured. American Standard knew about the accident involving Jeffers and Kontowicz by September 7, 2000, that Jeffers was at fault, and that Kontowicz was apparently paralyzed. Jeffers conceded liability in his answer to the interrogatories on December 28, 2000. American Standard had investigated the accident, and determined that once Kontowicz's severe injury was confirmed, in light of the admitted liability on the part of Jeffers, that it was liable under its policy.[17] We, therefore, hold consistent with the determination of the circuit court, that as of January 8, 2001,[18] § 628.46 the statutory 30–day period after which interest would accrue began running on $238,379.53 of Kontowicz's claim, and on August 2, 2001, the 30 days began to run on the full $500,000 claim.

LARRY BUYATT

¶ 54. With regard to Buyatt's claim, Metropolitan argues that even if the court finds that the statute

---

[17] We note that Kontowicz apparently was not wearing a seat belt at the time of the accident. In *Gaertner v. Holcka,* this court examined the codification of the common law "seat belt" defense into Wis. Stat. § 347.48(2m)(c)(1997–98). We concluded that the legislature intended to ensure that defendants received a possible reduction in plaintiff's recoverable damages of not more than 15 percent if plaintiff failed to use a seat belt. *Gaertner v. Holcka,* 219 Wis. 2d 436, 452, 580 N.W.2d 271 (1998). However, due to the severity of the injury suffered by Kontowicz even the maximum reduction allowed by law would not appear to be sufficient to bring her claim below the $500,000 policy limit.

[18] Since both the January 5, 2001 claim for $238,379.53 and the July 30, 2001 claim for $500,000 were made in writing and

allows prejudgment interest to third-party claimants, the courts below did not determine whether Metropolitan had a reasonable basis for denying the claim. In Buyatt's case, we hold that Metropolitan had knowledge of clear liability for the accident by January 29, 2001. However, in this case, because Metropolitan had information that there were pre-existing injuries of a similar nature, as well as similar injuries subsequent to the Schoessow accident, and it was fairly debatable as to whether the wage loss and medical specials were *all* attributable to the Schoessow accident, we determine that Metropolitan had reasonable proof to establish that it was not responsible for at least a portion of Buyatt's claim. The amount that it was responsible for could not be determined with any certainty. Therefore, interest under Wis. Stat. § 628.46 is not appropriate in Buyatt's case. However, because Metropolitan rejected Buyatt's April 16, 2003 settlement offer, and the jury awarded Buyatt an amount greater than that offer, we determine that Buyatt is entitled to interest under Wis. Stat. § 807.01(4), which began accruing on April 16, 2003, the date of his settlement offer.[19] Interest under § 807.01(4) is in lieu of, not in addition to, interest under § 628.46(1). *See Upthegrove,* 152 Wis. 2d at 14–15. However, we note that, in order to get interest

---

served upon American Standard by mail, the circuit court added three days for service by mail.

[19] Wisconsin Stat. § 807.01(4) (2003–04) states, in relevant part:

> If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12 % on the amount recovered from the date of the offer of settlement until the amount is paid.

331

pursuant to § 807.01(4), a full trial must first take place, and an award of damages must be made.

## V

¶ 55. We reverse the decision of the court of appeals. We conclude that when there is clear liability, a sum certain owed, and written notice of both, the plain language of Wis. Stat. § 628.46, incorporating by reference Wis. Stat. § 646.32(2), imposes 12 percent simple interest on overdue payments to third-party claimants in personal injury claims and actions. However, we limit our holding to only those situations in which three conditions to trigger the interest are met. First, there can be no question of liability on the part of the insured. Second, the amount of damages must be in a sum certain amount. Third, the claimant must provide written notice of both liability and the sum certain amount owed. We further hold that claims concerning the issue of interest due under § 628.46 may be bifurcated under Wis. Stat. § 805.05(2), and that, in the case of Buyatt, the award of interest should be in accord with Wis. Stat. § 807.01(4), rather than § 628.46.

*By the court.* — The decision of the court of appeals is reversed, and the matter remanded to the appropriate branch of the circuit court for entry of orders consistent with this decision.

¶ 56. JON P. WILCOX, J., took no part.

¶ 57. DAVID T. PROSSER, J. (*dissenting*). In 1975 the legislature amended the Wisconsin Insurance Code to require insurers to promptly pay every insurance claim. § 708, ch. 39, Laws of 1975. The new statute

(Wis. Stat. § 631.02 (1975)) determined that an insurance claim would be overdue if not paid within 30 days after the insurer was furnished with written notice of the fact and amount of a covered loss. The statute included a potent enforcement mechanism: "All overdue payments shall bear simple interest at the rate of 12% per year." *See* Wis. Stat. § 628.46(1) (2003–04).[1]

¶ 58. In 1978 this court described the "Timely payment of claims" statute as "an additional provision of the insurance contract incorporated into it by operation of law." *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 696, 271 N.W.2d 368 (1978); *see also Upthegrove Hardware, Inc. v. Pa. Lumbermans Mut. Ins. Co.,* 146 Wis. 2d 470, 484, 431 N.W.2d 689 (1988); *Poling v. Wis. Physicians Serv.,* 120 Wis. 2d 603, 612, 357 N.W.2d 293 (Ct. App. 1984).

¶ 59. The issue presented in this case is whether a third party tort plaintiff who is not an "insured" under an automobile insurance contract is entitled to make a claim against the insurer pursuant to Wis. Stat. § 628.46(1)—before a judgment is obtained or a settlement is reached or offered—thereby triggering the prompt payment requirement and the 12 percent interest penalty if timely payment is not made. I conclude that the legislature did not intend to authorize a third party tort plaintiff to invoke the provisions of § 628.46(1) on these facts, and that if such a plaintiff's "claim" were recognized, it would seriously undermine the contractual relationship between the insurer and the insured. Because the majority opinion reaches a different conclusion, I respectfully dissent.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated.

## I. STATUTORY AMBIGUITY

¶ 60. This is a statutory interpretation case. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Id.* (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659).

¶ 61. In the *Kalal* methodology, statutory ambiguity is a condition precedent to the examination of extrinsic sources, except in situations involving an absurd or highly unreasonable result, or when the court seeks to confirm or verify plain meaning. This is the rule because we "assume that the legislature's intent is expressed in the statutory language." *Kalal,* 271 Wis. 2d 633, ¶ 44. A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses. *Id.,* ¶ 47.

¶ 62. The majority opinion concludes that § 628.46 is unambiguous. It reaches this conclusion by disregarding fundamental rules of statutory interpretation, including: (1) the preference that words not be made superfluous, (2) the need to interpret a statute in context, and (3) the admonishment to avoid absurd or unreasonable results.

¶ 63. As will be shown, the statute is ambiguous. Without a sensible construction, the statute produces an unreasonable result, placing insurers in the impossible position of fulfilling irreconcilable duties to their insureds *and* to adversarial third party plaintiffs.

¶ 64. The statute to be interpreted reads in part as follows:

628.46 Timely payment of claims. (1) Unless oth-

erwise provided by law, an insurer shall promptly pay every insurance claim. A claim shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of the loss. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after written notice is furnished to the insurer. Any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment, notwithstanding that written notice has been furnished to the insurer. . . . All overdue payments shall bear simple interest at the rate of 12% per year.

(2) Notwithstanding sub. (1), the payment of a claim shall not be overdue until 30 days after the insurer receives the proof of loss required under the policy or equivalent evidence of such loss. . . .

. . . .

(3) This section applies only to the classes of claims enumerated in s. 646.31(2).

¶ 65. Subsection (3) references Wis. Stat. § 646.31(2), which reads in part:

(2) CLASSES OF CLAIMS TO BE PAID. No claim may be paid under this chapter unless the claim is in one of the following classes:

. . . .

(d) Third party claimants. A claim under a liability or workers' compensation insurance policy, if either the

335

insured or the 3rd party claimant was a resident of this state at the time of the insured event.

¶ 66. In this case, the meaning of § 628.46(1) is seriously muddled by the confusing relationships among several statutes.

¶ 67. First, the language of Wis. Stat. § 628.46(1) has not been changed since 1975. From the beginning, the statute has contained a qualifying opening clause: "Unless otherwise provided by law." This clause implies the need to examine other statutes. Unless this qualification is considered and excluded, there is some risk in applying the statute.

¶ 68. Second, subsection (1) began as a stand-alone statute. Now, however, it is affected by three additional subsections, one of which incorporates a second statute by reference. This underscores the proposition that § 628.46(1) cannot be interpreted by focusing solely on the subsection itself.

¶ 69. Third, by tying § 628.46(1) to § 646.31(2), § 628.46(3) introduces the concept of a third party claimant. Petitioners rely very heavily on § 646.31(2)(d) to interpret § 628.46(1). However, the key term in § 646.31(2)(d)—"third party claimant"—is not defined, and thus it too requires interpretation. The interpretation given to the term "third party claimant" may affect claims under Chapter 646 as well as the interpretation of § 628.46(1).

¶ 70. Fourth, inasmuch as reference is made in § 628.46(3) only to § 646.31(2), the question arises whether other provisions in Chapter 646 may be considered in interpreting § 646.31(2). Specifically, should § 646.31(2) be interpreted in light of the limitations in §§ 646.01 (which excludes certain insurance) and 646.31(1) (which establishes conditions of eligibility for

Chapter 646 claims and excludes claims "[m]ade for interest on any claim")?

¶ 71. Fifth, § 628.46(3) incorporates § 646.31(2) by reference. This incorporation occurred in 1976. At the time, Wisconsin case law provided that "[w]hen the adopting statute incorporates an earlier statute or a limited and a particular provision thereof by specific reference, such incorporation takes the statute as it existed at the time of incorporation and does not prospectively include subsequent modifications or a repeal of the incorporated statute or portions thereof." *Union Cemetery v. Milwaukee,* 13 Wis. 2d 64, 68, 108 N.W.2d 180 (1961). Although this rule of construction was superseded by Wis. Stat. § 990.01(5)(b) in 1979, *see* § 539, ch. 89, Laws of 1979, the new incorporated statute may be inconsistent with the original intent of the legislature.

¶ 72. Sixth, because plaintiffs are seeking interpretation of a statute that must have been interpreted by the Office of the Commissioner of Insurance (OCI) over a 30-year period, it would be helpful to know what interpretation, if any, OCI has given and what deference is owed to OCI's interpretation.

¶ 73. Finally, this case presents the question whether § 628.46 permits a third party *tort* plaintiff to invoke an insured defendant's *contract* rights. As a general rule, a contract cannot be enforced by a person not a party to it. *Abramowski v. Wm. Kelps Sons Realty,* 80 Wis. 2d 468, 472, 259 N.W.2d 306 (1977). On the other hand, this rule of "privity" is negated in certain circumstances by third party beneficiaries, *Schilling v. Employers Mutual Casualty Company,* 212 Wis. 2d 878, 886–87, 569 N.W.2d 776 (Ct. App. 1997), and may be affected by Wisconsin's direct action statute against insurers, Wis. Stat. § 632.24. If a third party tort plaintiff is entitled to invoke § 628.46(1), however, it is not clear

why some third parties are specifically precluded from invoking the statute by virtue of Wis. Stat. § 646.31(2).

¶ 74. With these points in mind, I believe the court of appeals was correct when it concluded that the statute is inconsistent and ambiguous,[2] and that its ambiguity permits us to examine extrinsic sources.

## II. LEGISLATIVE HISTORY

¶ 75. Wisconsin Stat. § 628.46(1) was created as part of the 1975 state budget bill. § 708, ch. 39, Laws of 1975. The new statute was numbered § 631.02. It was submitted as part of the budget by Governor Patrick Lucey.

¶ 76. Later that year, the Legislative Council, at the behest of the Insurance Law Revision Committee, introduced 1975 Senate Bill 642. Among other things, this "general revision of the insurance law relating to insurance contracts" proposed to renumber § 631.02 as § 636.10, without further changes. However, the Senate Committee on Commerce, to whom the bill was referred, offered Senate Amendment 1, adding subsections (2) and (3) to the renumbered section. This amendment was adopted and became part of the law. *See* § 43, ch. 375, Laws of 1975.

¶ 77. Subsection (3) of the newly created § 636.10 provided: "This section applies only to the classes of claims enumerated in s. 646.11(2)."[3] At that time, Wis. Stat. § 646.11 read in part:

---

[2] *Kontowicz v. Am. Standard Ins. Co.,* 2005 WI App 22, ¶ 10, 278 Wis. 2d 664, 693 N.W.2d 112; *see also Wis. Physicians Serv. Ins. Corp. v. Mitchell,* 114 Wis. 2d 338, 344–45, 338 N.W.2d 326 (Ct. App. 1983).

[3] Wisconsin Stat. § 628.46 was amended again in 2001 and 2002 to create subsection (2m), which relates to payment for chiropractic services. *See* 2001 Wis. Act 16, § 9327(1c); 2001 Wis. Act 65, §§ 19, 20.

(2) Classes of Claims To Be Paid. A claim shall not be paid unless it is:

(a) Residents. The claim of a policyholder or an insured of, or a beneficiary under, a policy or annuity, who at the time of the insured event or of the liquidation order was a resident of this state; or

. . . .

(c) Third party claimants. A claim under liability [or] worker's compensation insurance policy, if:

1. Either the insured or the 3rd party claimant was a resident of this state at the time of the insured event; or

2. The claim is for bodily or personal injuries suffered in this state or by a person who when he suffered the injuries was a resident of this state; or

3. The claim is for damage to property situated in this state at the time of damage.

Wis. Stat. § 646.11 (1975).

¶ 78. In 1979 chapter 646 was repealed and recreated, renumbering the former § 646.11 to § 646.31. § 14, ch. 109, Laws of 1979. New § 646.31 begins as follows: "(1) CONDITIONS OF ELIGIBILITY. A claim is not eligible for payment from the fund unless it is an unpaid claim for a loss insured under the policy or annuity." New subsection (2) moved "3rd party claimants" from paragraph (c) to paragraph (d). *Id.*

¶ 79. In 1999 the legislature repealed subdivisions 2 and 3 of paragraph (d), 1999 Wis. Act 30, §§ 73–76, and merged the introduction with subdivision 1, so that paragraph (d) reads: "A claim under a liability or workers' compensation insurance policy, if either the insured or the 3rd party claimant was a resident of this

339

state at the time of the insured event." Wis. Stat. § 646.31(2)(d). This is part of the language we must now review.

## III. ANALYSIS

¶ 80. Wisconsin Stat. § 628.46(1) has been part of Wisconsin law for more than 30 years, but no court has ever before given it the majority's interpretation in a published opinion. There is good basis for this forbearance in the text of the statute.

¶ 81. The respondent insurers point to certain terms and phrases in §§ 628.46(1) and (2), namely, "insurance claim," "claim . . . under the policy," "proof of loss required under the policy," and "covered loss," and suggest that these terms normally relate to first party claims.

¶ 82. Perhaps the most critical term in this list is "insurance claim." This term can easily be interpreted to connote a contract claim. The term "claim"—without any limiting adjective—is a broader term that may include a tort claim. The majority's interpretation of the statute either makes the terms "claim" and "insurance claim" interchangeable or concludes that a third party tort claim is an "insurance claim." Both of these propositions are dubious.

¶ 83. Metropolitan Property and Casualty adds an additional argument, that liability policy coverage provisions do not require an injured party to submit "proof of loss" to the insurer under the policy. It cites Wis. Stat. § 631.81 (approved as part of the same Chapter 375, Laws of 1975, that initially linked § 628.46 to § 646.31(2)). This statute relates "notice" and "proof of loss" to an *insured's* contract obligation

under the insurance policy.[4] A third party tort plaintiff is not required by § 631.81 to provide timely notice or "proof of loss" to an insurer because a third party tort plaintiff has no contract obligation.

¶ 84. It makes sense to apply § 628.46(1) to a first party claim. The first party insured has a contract with the insurer; and the insurer is part of a heavily regulated industry. Insurance regulation, by statute or rule, often serves to protect the interests of the "consumer" insured. In § 628.46(1), the legislature has created an

---

[4] Wisconsin Stat. § 631.81 provides:

> 631.81 Notice and proof of loss. (1) Timeliness of notice. Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

> (2) Method of giving notice. It is a sufficient service of notice or proof of loss if a 1st class postage prepaid envelope addressed to the insurer and containing the proper notice or proof is deposited in any U.S. post office within the time prescribed. The commissioner may expressly approve clauses requiring more expeditious methods of notice where that is reasonable.

> (3) Meaning of insurer's acts. The acknowledgment by the insurer of the receipt of notice, the furnishing of forms for filing proofs of loss, the acceptance of such proofs, or the investigation of any claim are not alone sufficient to waive any of the rights of the insurer in defense of any claim arising under the insurance contract.

In such cases as *Neff v. Pierzina*, 2001 WI 95, 245 Wis. 2d 285, 629 N.W.2d 177, Wisconsin courts have discussed an insured's contractual obligation to provide the insurer with timely notice or proof of loss. The statute reinforces the insured's contractual obligation. The insured's breach of this obligation may prejudice the insurer and invalidate or reduce the insured's claim. *See also,* Wis. Stat. § 632.26.

341

additional provision of the insurance contract to assure the prompt vindication of the insured's contract rights. *See Anderson,* 85 Wis. 2d at 696.

¶ 85. This same principle applies to certain "third party claimants." To illustrate: A man purchases a $500,000 life insurance policy. He names his wife as beneficiary. The "insured" expects that when he dies, the insurer will make a prompt payment to his beneficiary, who is a third party. *See Estate of Plautz v. Time Ins. Co.,* 189 Wis. 2d 136, 525 N.W.2d 342 (Ct. App. 1994).

¶ 86. A man is employed at a supermarket. He is injured on the job. His employer has purchased workers' compensation insurance for employees and the "insured" employer expects the insurer to provide prompt coverage for the third party employee's injury. *See Coleman v. Am. Universal Ins. Co.,* 86 Wis. 2d 615, 273 N.W.2d 220 (1979).

¶ 87. A woman has a health insurance policy. She becomes ill and is rushed to a hospital for treatment. The third party health care providers expect to be promptly paid by the woman's insurer under her policy. *See Wis. Physicians Serv. Ins. Corp. v. Mitchell,* 114 Wis. 2d 338, 338 N.W.2d 326 (Ct. App. 1983).

¶ 88. A driver has a typical automobile insurance policy. The driver hits a deer on the highway, causing extensive damage to the vehicle. The auto repair shop gives an estimate to the insured driver and the insurer and is authorized to proceed. When it completes its work, the third party auto repair shop expects to be paid promptly by the insurer pursuant to the policy.

¶ 89. In all these situations, the insured expects the insurance contract to be honored by the insurer even though the insured may not receive any direct payment. There may be a dispute about coverage be-

tween the insurer and the insured, or there may be a dispute about the amount to be paid. But, for the most part, the insurer, the insured, and any third party claimants are on the same side. The insured and third party claimants are almost always aligned. Sometimes third party claimants have been specifically named by the insured in the policy.[5]

¶ 90. A third party tort plaintiff is not on the same side as the insurer and the insured. The third party tort plaintiff—at least on the facts in these cases—is an adversary. *See Kranzush v. Badger State Mut. Cas. Co.,* 103 Wis. 2d 56, 64, 307 N.W.2d 256 (1981). In explaining the basis for a bad faith claim by an insured against an insurer, the *Kranzush* court stated:

> The insured's right to be treated fairly . . . is rooted in the contract of insurance to which he and the insurer are parties. *The third-party claimant has not contracted for insurance benefits and is not in a contractual relationship, much less a relationship of trust, with the insurer.*

*Id.* at 64 (emphasis added).

¶ 91. In short, § 628.46(1) fits most comfortably with first party claims. Where it is applied to first party claims and non-adversarial third party claims, the statute bolsters and expands an insured's contract rights.

---

[5] The court of appeals has provided an explanation why some third party claimants qualify under Wis. Stat. § 628.46(1):

> Under established Wisconsin law, a contract cannot be enforced by a person not a party to it. The exception to that rule is a contract specifically made for the benefit of a third party. The person claiming to be a third-party beneficiary of a contract must show that the contract was entered into by the parties to the contract directly and primarily for his benefit.

*Goossen v. Estate of Standaert,* 189 Wis. 2d 237, 249, 525 N.W.2d 314 (Ct. App. 1994) (citations omitted).

¶ 92. By contrast, applying § 628.46(1) to a third party tort plaintiff's claim may drive a wedge between the insurer and the insured and undermine their contractual relationship. This court has recognized a "special duty of good faith and fair dealing [that] runs throughout the contract relationship between the insurer and the insured," *Danner v. Auto-Owners Insurance,* 2001 WI 90, ¶ 49, 245 Wis. 2d 49, 629 N.W.2d 159. Their relationship is sometimes characterized as a "fiduciary" relationship. *See DeChant v. Monarch Life Ins. Co.,* 200 Wis. 2d 559, 570, 547 N.W.2d 592 (1996). It is unlikely that the legislature intended to put financial pressure on an insurer to terminate its "fiduciary" relationship with the insured.[6]

¶ 93. In *Alt v. American Family Mutual Insurance Company,* 71 Wis. 2d 340, 350, 237 N.W.2d 706 (1976), the court observed that an insurer "has an affirmative duty to seize whatever reasonable opportunity may present itself to protect its insured from excess liability." This duty is inconsistent with an insurer's early abandonment of the insured at the first opportunity after a tort claimant demands money, so that the insurer can avoid paying interest in excess of policy limits.[7]

---

[6] A liability insurance contract often requires the insurer to provide counsel for an "insured" defendant. Although counsel is compensated by the insurer, counsel is ethically obligated to represent the insured with loyalty and "independence of professional judgment." SCR 20:1.8(f)(2). The insurer must not interfere in this relationship. In my view, the advent of *insurer* liability to third party tort plaintiffs for interest may create new tensions in the insurer/insured relationship and cause some insurers to "pull the plug" on their insureds at an earlier stage than they might have in the past.

[7] In *Weimer v. Country Mutual Insurance Company,* 216 Wis. 2d 705, 724, 575 N.W.2d 466 (1998), the court quoted

¶ 94. *Kranzush* speaks of the balance between "the insurer's right to control the settlement process (and protect its own interests) [and] *the insured's right to be protected from liability for which he is not covered."* *Kranzush,* 103 Wis. 2d at 64 (emphasis added). "These are concerns to which the third-party claimant is a stranger." *Id.* The majority disrupts this balance by giving insurers a judicially sanctioned reason to elevate their interests and the interests of third party tort plaintiffs over the interests of their insureds.

¶ 95. Both the insurer and the insured have the right to put a tort plaintiff to his proof. "It is still the obligation of the tort victim to establish the fault of the tortfeasor, and it is still the prerogative of the alleged tortfeasor to defend himself in court." *Id.* at 65. This principle would be impaired if interest on a tort claim began to run against the insurer *before* a tort victim filed suit or offered settlement.

¶ 96. The *Kranzush* case rejected the creation of a tort of bad faith by a tort victim against the tortfeasor's insurer for failing to settle the victim's claim. The court explained that an insurer's duty to settle runs to the insured, not the claimant. *Id.* at 68. The court cited several cases from other courts, including *Uebelacker v.*

Arnold P. Anderson's treatise on *Wisconsin Insurance Law* § 8.2, at 237 (3d ed. 1990): "An insurance company has a duty to . . . do all that is reasonably necessary to protect its insured from any liability in excess of policy limits." Then it added: *"Failure to include language requesting release of [the insured] may subject [the insurer] to a claim of bad faith." Weimer,* 216 Wis. 2d at 724 (emphasis added) (citing *Alt v. Am. Family Mut. Ins. Co.,* 71 Wis. 2d 340, 350, 237 N.W.2d 706 (1976)).

Requesting release of the insured will not mean much if the plaintiff's rejection of the request does not toll the operation of the statute.

*Horace Mann Insurance Company,* 500 F.Supp. 180 (E.D. Wis. 1980), then summarized their holdings: "These cases stress a constant theme: an insurer owes no duty to the third-party [tort] claimant to settle or to negotiate in good faith." *Kranzush,* 103 Wis. 2d at 72. We reiterate the words of the supreme court of Maine, for we believe they well express the extent to which this cause of action would constitute a serious and unprecedented departure from established tort principles:

> [T]hat the insurer is the representative of the insured logically imports that the third party tort claimant's status as the adversary of the insured renders him, ipso facto, the adversary of the insured's agent. Thus, *prior to the establishment of legal liability, as the tort claimant has no legal right to require the tortfeasor to negotiate or settle, it likewise lacks right to require such action by his representative. [Linscott v. State Farm Mutual Auto. Ins. Co.,* 368 A.2d 1161, 1163–64 (Me. 1977).]

*Id.* at 72–73 (emphasis added).

¶ 97. The thrust of the majority opinion is to impose a duty on insurers, by statute, to start making payments within 30 days of a tort victim's demand, or risk the commencement of 12 percent interest. This duty may be imposed even before suit is filed, to say nothing of a court's determination of the insurer's liability. By requiring insurers to pay before a settlement is reached or a judgment rendered, the majority increases the likelihood that plaintiffs will hold out and demand more, thereby elevating the strategic position of third party tort plaintiffs in litigation at the expense of insureds.

¶ 98. Irrespective of common law principles, this court is expected to follow clear legislative mandates so long as they do not violate some constitutional provision. In this case, the mandate is not clear. Because the majority opinion represents a radical departure from

existing precedent, there ought to be some evidence that this result is what the legislature intended. I am unable to unearth that intent in extrinsic sources.

¶ 99.　The original proposal was contained in Governor Lucey's 1975–77 budget. I have been unable to find any explanation of the provision that does more than repeat in summary form the terms of the provision.[8] I have also been unable to locate any explanation of the 1976 amendment of the Senate Committee on Commerce.

¶ 100.　The Office of the Commissioner of Insurance (OCI) has recognized § 628.46 as part of the statutory Wisconsin Insurance Code since 1975. In 1978 John Sheski, a young attorney on the Health Insurance Project Team at OCI, wrote a 12–page internal memorandum discussing potential interpretations of the "Timely payment of claims" statute. Sheski advocated interpreting the statute to benefit third party claimants. Memorandum from John Sheski to Laurie Riach dated September 27, 1978, regarding "Entitlement to Statutory Interest 'Penalty' Provided by Section 636.10, Wis. Stats." (on file with the State of Wisconsin Office of Commissioner of Insurance, Madison, Wisconsin) (hereinafter Sheski Memorandum).

―――――――――――

[8] Book 1 of the 1975–77 Executive Budget describes the budget requests of the Office of the Commissioner of Insurance and the Governor's recommendations with respect to these requests. This document does not mention the Governor's proposal for the timely payment of claims statute. The budget document does mention that the "mission of the office [of Commissioner of Insurance] is to regulate and supervise the insurance industry so that the *insurance consumer* can be assured that there will be fair competition in the market place and that *the consumer's needs can be met*." Department of Administration, Bureau of Planning & Budget, Executive Budget of the State of Wisconsin, Book 1, at 122, 1975–77 (Jan. 1975).

¶ 101. Sheski's memorandum discusses "present ambiguity" in the statute, draft legislation (never enacted) from the Legislative Council to revise Chapter 636, contemporary cases on prejudgment interest, the incorporation of then Wis. Stat. § 646.11(2) (1975) by reference, and a November 9, 1976, memorandum to Commissioner Harold R. Wilde from Assistant Deputy Commissioner Marvin E. Van Cleave. Sheski argued that under certain circumstances, third party claimants were entitled to receive the interest under the statute. He contended that the statute did not appear to alter case law on prejudgment interest. "[Wisconsin Stat. §] 636.10 provides a statutory right to such interest at a 12% per annum rate which the courts must award if the claimant asks for it as part of the requested relief and the insurer has no valid defense." Sheski Memorandum at 5.

¶ 102. The memorandum acknowledges, however, that the Insurance Laws Revision Committee wanted to modify the language in the statute, removing "detail that is not fairly applicable to all kinds of claims." Sheski Memorandum at 2. It quotes the Van Cleave memorandum as summarizing a discussion about the modification proposal not applying to third party claims: "Laura Sullivan related the concern of her claims people with what their responsibilities are with respect to third party claims—[Spencer] Kimball said that the response could be that there was no liability." Sheski Memorandum at 10 (quoting Van Cleave memorandum).

¶ 103. Sheski's comment on this was that "It's evident that Kimball and others were of the opinion that there was no insurer liability to third-party claimants for the interest 'penalty.' " Sheski Memorandum at 11.

¶ 104. The importance of the Sheski Memorandum is that in 1978 OCI had an advocacy memorandum in behalf of third-party claimants. Yet, I found no evi-

dence that OCI ever followed up and applied Wis. Stat. § 628.46(1) against an insurer who did not promptly settle a claim from a third party tort plaintiff. Rather, it appears that OCI has used § 628.46(1) to apply discipline only to insurers who did not promptly settle with insureds and non-adversarial third parties. In fact, in a 1987 opinion, OCI posed the question: "If an insurer agrees to pay 70 percent of a third-party claim but does not pay this amount because the third-party disagrees with the offer and the claim is ultimately settled for 80 percent, is the insurer subject to pay an interest penalty because they did not timely pay the 70 percent offer?" OCI staked out the legal position that "Interest is not due because liability has not been established," citing Wis. Stat. § 628.46. Legal Position Binder, Opinion Number 6, dated March 31, 1987 (on file with State of Wisconsin Office of Commissioner of Insurance, Madison, Wisconsin).

¶ 105. OCI's interpretation of the statute is consistent with the view that Wis. Stat. § 628.46(1) is intended to bolster the "consumer" insured's contract rights under the insurance policy. For OCI to review and discipline an insurer for its performance in dealing with a third party tort claimant would introduce a dramatic new element into tort litigation.

¶ 106. Third party tort plaintiffs have well-established alternative protections, including Wis. Stat. § 807.01(4). If Wis. Stat. § 628.46(1) is interpreted to apply to a third party tort plaintiff, the statute conflicts with Wis. Stat. § 807.01(4),[9] inasmuch as a plaintiff

---

[9] Wisconsin Stat. § 807.01(4) reads as follows:

(4) If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer

349

under § 807.01(4) may not make a consequential offer of settlement until "after issue is joined." On the other hand, § 628.46 does not require the plaintiff to make any offer of settlement. In effect § 628.46(1), as interpreted by the majority, displaces § 807.01(4) in every third party tort plaintiff case involving an insurer. This will penalize insurers in situations where it would not penalize actual tortfeasors.

¶ 107. Several courts have explained that the purpose of Wis. Stat. § 807.01(4) is to encourage settlement of cases prior to trial. *See Beacon Bowl, Inc. v. Wis. Elec. Power Co.,* 176 Wis. 2d 740, 778, 501 N.W.2d 788 (1993); *DeMars v. LaPour,* 123 Wis. 2d 366, 373, 366 N.W.2d 891 (1985); *Graves v. Travelers Ins. Co.,* 66 Wis. 2d 124, 140, 224 N.W.2d 398 (1974); *Gorman v. Wausau Ins. Cos.,* 175 Wis. 2d 320, 328, 499 N.W.2d 245 (Ct. App. 1993). This purpose is different from bolstering an insured's contract rights.

¶ 108. There are numerous situations in which a third party tort claimant will be entitled to pre-verdict interest on his claim, but the majority's interpretation of § 628.46 may conflict with established Wisconsin law on pre-verdict interest in personal injury cases in the absence of an offer of settlement under § 807.01(4). *See Johnson v. Pearson Agri-Systems, Inc.,* 119 Wis. 2d 766, 350 N.W.2d 127 (1984).[10] By reconciling Wis. Stat. § 628.46 with our pre-verdict interest decisions in other

of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).

[10] In *Johnson v. Pearson Agri-Systems, Inc.,* 119 Wis. 2d 766, 350 N.W.2d 127 (1984), the court was confronted with the question whether a plaintiff in a personal injury action is entitled to interest on the damage award from the time of the injury through the date the verdict is rendered. The court noted

third party cases, my position requires a third party tort plaintiff to meet a higher burden than a person exercising a *contract* right under a policy, and thus decreases the likelihood of satellite litigation.

¶ 109. If the majority were not concerned about the far-reaching implications of its decision, it would not have decided to rewrite a purportedly unambiguous statute to create "tests" for the third party tort plaintiff to meet.

¶ 110. I think the better course is to uphold the interpretation of the OCI and the court of appeals.

¶ 111. For the reasons stated, I respectfully dissent.

---

three statutes: Wis. Stat. § 814.04(4) (1981–82) ("pre-judgment interest at the rate of 12% per year from the time of the verdict until judgment is entered"); Wis. Stat. § 815.05 (post-judgment interest at 12% per year); and Wis. Stat. § 807.01(4) (regarding settlement offers from plaintiff). The court said:

> If this court were to accept plaintiff's arguments and allow for pre-verdict interest we would face serious policy decisions that could thwart the attempt of the legislature to encourage settlement of lawsuits. Should we allow twelve percent pre-verdict interest for instance to a plaintiff even though no settlement offer had been made by such plaintiff? There would be no incentive for a plaintiff to offer to settle in order to get pre-verdict interest. This would seem to be an unwarranted thwarting of a statute designed to encourage an end to litigation and to relieve overcrowded court calendars. To award pre-verdict interest where an offer made and rejected was more than what the jury finally awarded would likewise thwart the purpose of the statute. To award pre-verdict interest where an offer was less than the verdict would then in effect amend a legislative act by doubling the amount the legislature had determined should be the incentive for encouraging the making and acceptance of settlement offers. This we decline to do.

*Johnson,* 119 Wis. 2d at 773–74.